PRESENT: Lemons, C.J., Goodwyn, McClanahan, Powell, Kelsey, and McCullough, JJ., and Koontz, S.J.

RECP IV WG LAND INVESTORS LLC

OPINION BY
v. Record No. 161506         ELIZABETH A. McCLANAHAN
April 5, 2018

CAPITAL ONE BANK (USA), N.A.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

This case involves a dispute over contractual provisions in a real estate purchase agreement ("Agreement") allocating future development rights for properties located near a new Metro rail station in Tysons Corner. Appellant RECP IV WG Land Investors LLC ("WG Land") is an assignee of certain rights of the seller under the Agreement and appellee Capital One Bank (USA), N.A. ("Capital One") is the assignee of the purchaser. WG Land challenges the circuit court's dismissal of its suit against Capital One instituted on allegations that Capital One breached the Agreement and certain related covenants by Capital One's development of the property acquired under the Agreement. WG Land also challenges the court's award of attorney's fees to Capital One. Concluding there is no reversible error in the judgment of the circuit court, we affirm.

I.

A.

In 2000, WG Land's predecessor, West*Group Properties, LLC ("West*Group"), subdivided an office park ("Office Park Property") in the Tysons Corner area of Fairfax County and sold approximately 29 acres of the park ("Capital One Property") to Capital One's predecessor, Capital One Financial Corporation ("Capital One Financial"), pursuant to the terms of the Agreement and a related Supplemental Declaration and Restrictive Covenant

("Declaration"). At the time of the sale, the Office Park Property was subject to a numerical cap on the development density under Fairfax County's Comprehensive Plan by the allocation of a maximum amount of floor area ratio ("FAR") for the properties in that area. FAR is the relationship between the total amount of a building's usable floor area and the total area of the parcel upon which the building stands. For example, a FAR of 1.0 means the gross floor area of the building(s) must not exceed the area of the parcel, whereas a FAR of 2.0 means the gross floor area of the building(s) must not exceed twice the area of the parcel. Thus, with this cap on FAR in place, an allocation of more FAR for the Capital One Property meant that less FAR would be available for West*Group's remaining parcels, and vice versa. FAR is commonly expressed in square footage and using that formulation, as set forth in the Agreement and recorded Declaration, West*Group transferred 1.1 million square feet of FAR to Capital One Financial from the total amount of FAR allocated for the Office Park Property by the County.

The parties included provisions in the Agreement and Declaration restricting Capital One Financial's use and development of the Capital One Property. An eight-year restriction on Capital One Financial's right to apply for additional FAR rights from the County was imposed. West*Group was also given the right to repurchase the Capital One Property if Capital One Financial sought to sell or lease it, including any FAR associated with it, within a ten-year period.

Furthermore, because the parties anticipated that the Metro rail system's expansion would result in the County allowing more development density in the area, they included a specific mathematical formula ("FAR formula") to apportion between West*Group and Capital One Financial any additional FAR that might become "available" to the Capital One Property. Under this "shar[ing]" formula, Capital One Financial would receive the first 200,000 square feet of

2

such FAR and the remainder would be fractionally divided between the two parties. The Agreement in § 28.7(b) and the Declaration in 4 contain identical language in setting forth the FAR formula. Significantly, the FAR formula incorporated a portion of Fairfax County's 2000 Comprehensive Plan ("2000 Plan") entitled "Transit Station Areas," which specified the expected fixed amount of FAR that would be available to properties located around a new Metro rail station in Tysons Corner such as the Capital One Property and neighboring properties. Pursuant to the 2000 Plan, the FAR for the Capital One Property would range from 1.0 to 1.5 within what the FAR formula referred to as the County's "Existing Metro Overlay" district.

In 2010, West*Group assigned its rights under the Agreement and Declaration to WG Land and transferred to WG Land ownership of the remaining parcels comprising the Office Park Property. WG Land immediately assigned and transferred the same to various special purpose entities of which WG Land was the majority owner. Those entities subsequently assigned their intangible rights under the Agreement back to WG Land, including the right to receive a portion of new FAR allocated to the Capital One Property. But those entities did not transfer title to their respective properties. Thus, WG Land does not hold title to any of the neighboring properties benefited by the Declaration ("Neighboring Properties").

Also in 2010, the County amended its Comprehensive Plan ("2010 Plan") with an "Amended Metro Overlay" district, which lifted the cap on FAR for properties located around the new Metro rail stations in Tysons Corner. More specifically, the Amended Metro Overlay provided that "[t]he highest intensities in Tysons should be built in areas closest to the Metro station entrance. . . . [T]he intensity of redevelopment projects within 1/4 mile of the Metro stations should be determined through the rezoning process; in other words, *no individual site within these areas should be subject to a maximum FAR*." (Emphasis added.) Such areas

3

included the Capital One Property and the Neighboring Properties owned by the above-referenced special purpose entities.

Capital One, as Capital One Financial's assignee and the owner of the Capital One Property, subsequently filed rezoning requests with the County for additional FAR, and in 2012 received approval to develop an additional 3.8 million square feet of FAR on the Capital One Property, which was then the location of Capital One's headquarters.[1] Capital One thereafter began construction in furtherance of its plans approved by the County to use this additional FAR for expansion of its corporate campus and other mixed-use development of the Capital One Property.

B.

WG Land, in 2015, filed suit against Capital One based on Capital One's use of its additional FAR rights acquired from the County. The special purpose entities holding title to the Neighboring Properties did not join the suit. WG Land alleged that additional FAR became "available" under the terms of the FAR formula as a result of Capital One's zoning requests, and that Capital One breached its obligations under the FAR formula in the Agreement and Declaration by developing the Capital One Property without allocating and conveying a portion of those FAR rights to WG Land. WG Land's complaint set forth three counts, all of which were based on this alleged breach of contract. In Count I, WG Land sought a declaratory judgment that the FAR allocations in the Agreement and Declaration were enforceable and Capital One's development activities violated the FAR formula governing those allocations. In Count II, WG Land sought a prohibitory injunction to preserve the status quo and a permanent injunction

_____

[1] This resulted in a total of 4.9 million square feet of approved FAR on the Capital One Property.

4

against the development of the Capital One Property in excess of the development rights granted under the Agreement and Declaration. In Count III, as an alternative to the injunction, WG Land sought $120 million in damages against Capital One for this alleged breach of the Agreement and Declaration.

For its response, Capital One initially filed a demurrer and plea in bar. Capital One asserted in the demurrer, *inter alia*, that WG Land's request for declaratory judgment should be dismissed because WG Land was not simply requesting a declaration of the parties' rights and obligations. Rather, WG land sought a finding that Capital One had actually breached the Agreement and Declaration by failing to allocate and convey FAR rights to WG Land. Having thus alleged a claim that had "accrued and matured," WG Land was not entitled to a declaratory judgment, Capital One argued.

In support of the plea in bar, Capital One asserted as one of its principal defenses that the changes in the County Comprehensive Plan in 2010 with the removal of the FAR cap through an Amended Metro Overlay defeated the purpose of the FAR formula and rendered it impossible to perform. Capital One argued that with this removal of the cap on development density for the Capital One Property and the Neighboring Properties, there was no basis for the Neighboring Properties to secure from Capital One an extra share of what was previously a maximum amount of development density rights for the area. Moreover, Capital One argued, the removal of the cap made the equations in the FAR formula impossible to calculate in the absence of a set number for a maximum FAR. Thus, according to Capital One, its performance under the FAR formula was excused by the doctrine of impossibility, thereby barring WG Land's action against it.

Capital One also asserted in its plea in bar that property ownership was a requirement under the FAR formula, which expressly provided that FAR may only be "conveyed, allocated or otherwise made available to [West*Group or its successors], for their use in connection with properties now or then owned by them in the area." Because WG Land did not hold title to any of the Neighboring Properties, Capital One argued, WG Land had no contractual right, i.e., standing, to seek enforcement of the FAR formula against Capital One, thereby presenting an additional bar to WG Land's action against it.

The parties subsequently filed cross-motions for summary judgment on the issue of liability. As stated in WG Land's supporting memorandum, "[t]he parties agree that this case turns on the interpretation of [the Agreement and Declaration]" and that interpretation presents a "purely legal" issue "ripe for adjudication." Furthermore, WG Land asserted, "because [its] principal claims for declaratory and injunctive relief are equitable and do not depend on disputed issues of fact, there is no reason to proceed to a trial on the merits; rather summary judgment should be granted in [its] favor." According to WG Land, the FAR formula plainly provided that the "available" FAR should be determined by reference to actual development density Capital One received through a rezoning application, and not by reference to the development density available under the County Comprehensive Plan.

Conversely, in support of its motion for summary judgment in regard to its interpretation of the FAR formula, Capital One reiterated the central argument supporting its plea in bar. Capital One again argued that the "available" density development under the FAR formula was expressly based on the maximum FAR available under the County Comprehensive Plan's Metro Overlay; and when the 2010 Plan removed the FAR cap through an Amended Metro Overlay, the FAR formula became impossible to calculate and perform.

6

In further support of its motion for summary judgment, Capital One repeated the above-stated argument supporting its plea in bar that WG Land had no contractual right to enforce any of the rights or remedies under the Agreement or Declaration because WG Land was not a fee simple owner of the Neighboring Properties. Also, Capital One argued that WG Land's claim for damages was invalid because it was not based on any legally recognized theory of damages.[2]

C.

The circuit court issued a 26-page letter opinion in which it ultimately ruled in Capital One's favor on these dispositive motions and denied WG Land's motion for summary judgment. The opinion was later incorporated by reference into the final order.

As a preliminary matter, the circuit court agreed with Capital One that WG Land, as a non-landowner, lacked standing to enforce the Declaration under Virginia law.[3] However, contrary to Capital One's assertions, the court ruled that WG Land had standing to enforce the Agreement as an assignee of West*Group.[4]

Turning to the merits of the three counts in WG land's complaint, the circuit court first sustained Capital One's demurrer to WG Land's request for declaratory judgment under Count I.

---

[2] This argument was based on the fact that WG Land admitted that "the nature of its damages is unquantifiable" in terms of any loss of value to the Neighboring Properties as a result of the development of the Capital One Property. WG Land sought, instead, to offer as its measure of damages the appraised value of the density rights related to the Capital One Property in the sum of $120 million which Capital One contended was improper.

[3] As authority for this ruling, the circuit court cited *Mid-State Equip. Co. v. Bell*, 217 Va. 133, 141, 225 S.E.2d 877, 884 (1976), and *Old Dominion Iron & Steel Corp. v. Virginia Elec. & Power Co.*, 215 Va. 658, 663, 212 S.E.2d 715, 719-20 (1975).

[4] According to the circuit court, "the only difference in outcome in terms of whether WG Land can enforce the contract or the covenant running with the land [i.e., the Declaration] would have been WG Land's ability to seek recovery of attorney's fees under [the] Declaration [as originally executed and recorded]. Otherwise, the potential relief is the same, whether an action is brought under the Purchase Agreement or the Declaration."

7

The court did so on the basis that, as alleged in the complaint, "Capital One has proceeded with development [of the Capital One property] under its interpretation of the [Agreement] and the rights of the parties have been fully invaded," due to Capital One's alleged "wrongful retention of excess FAR" in the course of that development. Thus, the court concluded, WG Land was not entitled to declaratory judgment because its claims had "accrue[d] and mature[d]."

The circuit court then sustained Capital One's plea in bar and granted its motion for summary judgment as to Counts II and III. The court ruled, as a matter of law, that WG Land had not established grounds for an injunction based on an alleged breach of contract under Count II, and had not established, in the alternative, grounds for a breach of contract and damage award under Count III. The court so ruled upon concluding that Capital One had not breached the FAR formula because it was impossible to calculate and perform.

The circuit court framed the issue as follows:

> Capital One argues that the [FAR] Formula is impossible to perform because the additional FAR available is infinity. WG Land argues that the actual number of FAR received in Capital One's Rezoning Application . . . is the "Additional Metro FAR Number." This issue turns on whether the phrase "If . . . additional FAR is ever available to the [Capital One] Property" means square footage made available due to a change in the FAR value (e.g., a change from a FAR of 1.5 to a FAR of 3.5 in a metro overlay), or the amount approved for development in a re-zoning application submitted to the County.

Upon a plain reading of its terms, the court reasoned, the FAR formula was rendered impossible to perform when "the County eliminated the cap on FAR" in 2010 (for the first time) under the terms of an Amended Metro Overlay, which was incorporated into the FAR formula by reference. "[G]iven the now uncapped FAR associated with the Property," the court determined, "the value of 'additional' FAR under the Formula is infinity, which is no longer a numerical value capable of being multiplied. As Capital One states, any number multiplied by infinity equals infinity." The court went on to explain that the FAR formula "depended on the existence

8

of a fixed value of FAR. As the removal of the cap has rendered the Formula unworkable, Capital One is excused from performing. This [c]ourt declines to rewrite the Formula to render it workable in an 'unlimited FAR' scenario and will apply it [as] written."[5]

Lastly, the circuit court awarded attorney's fees, costs and expenses to Capital One totaling $1,894,477.27. The court made this award to Capital One as the "prevailing party" pursuant to the fee-shifting provision under § 32 of the Agreement.[6] In doing so, the court rejected as relevant here the following arguments asserted by WG Land as reasons for denying the award: (i) the fact that Capital One prevailed on its impossibility defense means that § 32 was rendered unenforceable; (ii) Capital One lobbied the County for the elimination of the cap on

---

[5] As an additional reason for dismissing Count II, the circuit court concluded from its reading of the FAR formula and related provisions that the removal of the cap on FAR rendered the purpose of the FAR formula unnecessary—which purpose was "to require the parties to 'share' additional FAR, rather than 'limit' Capital One's use of its FAR rights" as WG Land contended. Section 28.7(b) of the Agreement, the court explained, addresses circumstances in which "the available FAR changes due to amendments in the existing ordinances"; and in the event of such changes "the parties agreed to apply a Formula, the purpose of which is not to restrict Capital One's development rights, but to require the parties to share the FAR amongst the sites within the parcel." An exception to this sharing arrangement, the court further explained, was the Agreement's express eight-year limitation on Capital One's right to seek additional FAR (which had expired and was not at issue).

The circuit court then ruled, as an additional reason for dismissing Count III, that WG Land's theory of damages based upon the value of the Capital One Property was an improper measure of contract damages. In short, the court explained, "[e]vidence of Capital One's gains is not evidence of WG Land's pecuniary loses."

[6] Section 32 of the Agreement states: "To the extent permitted by law, in any action or proceeding brought by either party against the other under the Agreement, the prevailing party shall be entitled to recover from the other party the professional fees incurred by the prevailing party . . . [including] attorney's fees . . . and other legal expenses and court costs. The provisions of this Section 32 shall survive Closing and termination of this Agreement."

9

FAR; and (iii) Capital One was not a "prevailing party" because the impossibility of the FAR formula's enforcement could be temporary.[7]

WG Land now appeals each of these rulings of the circuit court.

## II.[8]

### A. Count I

WG Land argues that it alleged a proper claim for declaratory judgment under Count I of the complaint and thus the circuit court erred in sustaining Capital One's demurrer to this claim. We disagree.

"The purpose of a demurrer is to determine whether a complaint states a cause of action upon which the requested relief may be granted." *Collett v. Cordovana*, 290 Va. 139, 144, 772 S.E.2d 584, 587 (2015) (alteration and citation omitted); *see also* Code § 8.01-273. "Because the decision to sustain a demurrer presents an issue of law, we review the circuit court's judgment de novo." *Dye v. CNX Gas Co., LLC*, 291 Va. 319, 323, 784 S.E.2d 703, 705 (2016); *see La Bella*

---

[7] WG Land made a number of other arguments to the circuit court challenging Capital One's claim for attorney's fees that are not asserted on appeal, including WG Land's argument that the requested fees were not reasonable and necessary.

[8] As a threshold matter, we need not address WG Land's assignment of error challenging the circuit court's ruling that, while it had standing to enforce the Agreement, it did not have standing to enforce the Declaration. For the reasons discussed in Part II.B., *supra*, we agree with the circuit court's construction of the FAR formula and conclusion that the removal of the FAR cap under the Amended Metro Overlay rendered the FAR formula impossible to calculate and perform. We thus hold that Capital One did not breach the FAR formula by not allocating FAR to WG Land. Accordingly, even if we assume WG Land had standing to enforce the Declaration, as well as the Agreement, the result would be the same because the FAR formula is identical in both the Agreement and Declaration. *See Rastek Constr. & Dev. Corp. v. Gen. Land Commercial Real Estate Co.*, 294 Va. 416, 423, 806 S.E.2d 740, 744 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419, 799 S.E.2d 494, 498 (2017)).

10

*Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 255, 805 S.E.2d 399, 405 (2017).

WG Land's central and repeated allegation in Count I of the complaint, as well as Counts II and III, was that Capital One breached the Agreement and Declaration by its use of, and refusal to allocate to WG Land, excess development density or FAR rights under the FAR formula. This is exemplified by the following excerpts from the "Facts" section of the complaint, which was incorporated into each of the three counts:

- [S]eeking to take advantage of the newly available density and no longer satisfied with the bargain it struck, Capital One intentionally breached its obligations by, among other things, filing with Fairfax County in August, 2010, and thereafter obtaining Fairfax County's approval of an application to rezone the Capital One Property . . . (the "Rezoning"). In the Rezoning, Capital One improperly sought and obtained approval of a mixed-use development plan through which Capital One purported to retain for its exclusive use and enjoyment additional density rights far in excess of what is permitted under the [Agreement] and [Declaration].

- The purpose of Capital One's Rezoning was to "re-plan the remainder of the Capital One campus to an exciting, vibrant, transformative, transit-oriented, mixed-use development" to contain in excess of 4.9 million square feet of development. Such a development would be roughly 3.8 million square feet of FAR more than the original Allocated FAR Rights, and in excess of any FAR allocable under the formula set forth in the [Agreement] and [Declaration].

- Capital One thereafter further breached the terms of the [Agreement] and [Declaration] by, among other things, filing and, on or about April 23, 2014, obtaining County approval of, the Final Development Plan Amendment . . . that likewise sought to exercise and keep for itself development rights grossly in excess of its allocation under the [Agreement] and [Declaration] without making any provision for allocation of any additional density rights to West*Group and/or its successors and assigns.

Based on these and other similar allegations, WG Land further alleged that Capital One's "improper actions" had "impaired and otherwise undermined and devalued Plaintiff's property interests and development opportunities." WG Land then asserted that "Capital One should be declared in breach" of the Agreement and Declaration, and requested that the FAR related

11

provisions of the Agreement and Declaration be declared "valid and enforceable by the Plaintiff."

As this Court has made clear, "[t]he General Assembly created the power to issue declaratory judgments to resolve disputes 'before the right is violated.'" *Charlottesville Area Fitness Club Operators Ass'n,* 285 Va. 87, 98, 737 S.E.2d 1, 7 (2013) (quoting *Patterson v. Patterson*, 144 Va. 113, 120, 131 S.E. 217, 219 (1926)). In other words, "[t]he intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature." *Cherrie v. Virginia Health Servs*., 292 Va. 309, 317-318, 787 S.E.2d 855, 859 (2016) (quoting *Charlottesville Area Fitness Club Operators Ass'n*, 285 Va. at 99, 737 S.E.2d at 7). Accordingly, "where claims and rights asserted have fully matured, and the alleged wrongs have already been suffered, a declaratory judgment proceeding . . . is not an available remedy." *Charlottesville Area Fitness Club Operators Ass'n,* 285 Va. at 99, 737 S.E.2d at 7 (quoting *Board of Supervisors v. Hylton Enters*., 216 Va. 582, 585, 221 S.E.2d 534, 537 (1976)).

WG Land's contention on appeal that its claim for declaratory judgment under Count I was not based on a "matured disputed issue" belies the central allegation, once again, upon which its entire complaint was grounded: Capital One breached the Agreement and Declaration by acquiring and using a certain percentage of FAR that it should have allocated to WG Land under the FAR formula. Indeed, WG Land sought an injunction or alternatively $120 million in damages under Counts II and III, respectively, based on those same alleged wrongful actions that Capital One had already taken.

We also reject WG Land's assertion that it was entitled to declaratory relief based on the circuit court's finding, when addressing WG Land's objection to Capital One's request for

12

attorney's fees, that the FAR formula was rendered only "temporarily impossible" to perform.

In its letter opinion awarding attorney's fees to Capital One, the court stated:

> Here, when Fairfax County lifted the cap on the FAR associated with the affected properties, it rendered performance by either party of the density provisions temporarily impossible . . . . Thus, Capital One's obligation to share FAR with WG Land is suspended, not discharged. If a cap or limitation is later imposed by governmental regulations, the duty to share additional FAR under the Agreement may be reinstated depending on the circumstances . . . .

To the extent WG Land sought declaratory judgment to resolve rights for a theoretical scenario under a future County Plan, it was improperly requesting an advisory opinion. *See Martin v. Garner*, 286 Va. 76, 83, 745 S.E.2d 419, 422 (2013) ("[T]he question involved [in a declaratory judgment action] must be a real and not a theoretical question." (quoting *Patterson*, 144 Va. at 120, 131 S.E. at 219); s*ee also Charlottesville Area Fitness Club Operators Ass'n*, 285 Va. at 107, 737 S.E.2d at 12 (Kinser, J., concurring) ("[R]endering a declaratory judgment in the absence of an actual controversy constitutes an advisory opinion."); *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 418, 177 S.E.2d 519, 522 (1970) (explaining, in the context of a declaratory judgment, that "the rendering of advisory opinions is not a part of the function of the judiciary in Virginia" (citations omitted)).

## B. Counts II & III

We now turn to WG Land's challenges to the circuit court's construction of the FAR formula and related application of the impossibility doctrine as grounds for sustaining Capital One's Plea in Bar and granting its Motion for Summary Judgment as to both Counts II and III.

### 1.

The parties dispute the "plain meaning" of the FAR formula. Thus, we must determine if the FAR formula has "a meaning discernible from the words alone, and if so, whether the trial

court correctly interpreted [it]." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 178, 788 S.E.2d 237, 243 (2016). This presents an issue of law subject to de novo review. *Id.*

The fundamental question before us in construing a contract is "what did the parties agree to as evidenced by their contract," and the "guiding light" for such construction is "the intention of the parties as expressed by them in the words they have used." *Schuiling v. Harris*, 286 Va. 187, 192, 747 S.E.2d 833, 836 (2013) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). In other words, "[w]e construe [a contract] as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning." *City of Chesapeake v. Dominion SecurityPlus Self Storage, L.L.C.*, 291 Va. 327, 335, 785 S.E.2d 403, 406 (2016) (quoting *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 516, 758 S.E.2d 55, 60 (2014)).

"An instrument will be deemed unambiguous if its provisions are capable of only one reasonable construction. Conversely, [it] will be deemed ambiguous . . . if its language admits of being understood in more than one way or refers to two or more things at the same time." *Wetlands America Trust, Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 161-62, 782 S.E.2d 131, 136 (2016) (citations and internal quotation marks omitted).[9]

---

[9] We note that "[a] contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language." *Babcock & Wilcox Co.*, 292 Va. at 179, 788 S.E.2d at 244 (quoting *Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp.*, 263 Va. 169, 173, 556 S.E.2d 769, 771 (2002)).

Furthermore, when the disputed term of a written instrument is a restrictive covenant imposing an encumbrance on land, as with the FAR formula,[10] to the extent it "suffer[s] from any 'substantial doubt or ambiguity'" it is to be "strictly construed against the party seeking to enforce [it]." *Id.* at 162, 782 S.E.2d at 136 (quoting *Friedberg v. Riverpoint Bldg. Comm.*, 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977)).[11]

The dispute between the parties over the construction of the FAR formula centers on whether FAR should be allocated (a) by reference to the development density allowed under the County Plan's Metro Overlay, as Capital One contends, or (b) by reference to FAR actually received by Capital One through a rezoning application, as WG Land contends. We conclude that the FAR formula, when read in the light of the governing rules of construction, can only reasonably be construed as requiring the allocation of FAR in reference to the County Plan's Metro Overlay, as the circuit court correctly concluded.

That determination is then the predicate for our further conclusion that, with the County's removal of the cap on FAR under the 2010 Plan, the FAR formula became impossible to calculate and perform. This Court has long recognized an impossibility defense in contract actions. *See Hampton Rds. Bankshares, Inc. v. Harvard*, 291 Va. 42, 53-54, 781 S.E.2d 172, 177-178 (2016); *Long Signature Homes v. Fairfield Woods*, 248 Va. 95, 98-99, 445 S.E.2d 489,

---

[10] After setting forth the FAR formula, the Agreement expressly describes the Declaration, in which the FAR formula "shall [also] be reflected," as "a covenant encumbering the [Capital One] Property."

[11] *See also Anderson v. Lake Arrowhead Civic Ass'n*, 253 Va. 264, 269-70, 483 S.E.2d 209, 212 (1997) (explaining that restrictive covenants are not favored under Virginia law and must be strictly construed against the restrictions and in favor of the free use of property where there is substantial doubt or ambiguity as to their meaning (citing *Friedberg*, 218 Va. at 665, 239 S.E.2d at 110)).

15

491 (1994); *Housing Auth. of Bristol v. East Tenn. Light & Power Co.*, 183 Va. 64, 72, 31 S.E.2d 273, 276 (1944).  As we recently explained in *Hampton Rds. Bankshares, Inc.*:

> The defense of impossibility of performance is an established principle of contract law.  In Virginia, it is "well settled that where impossibility is due . . . to the fortuitous destruction or change in the character of something to which the contract related, or which by the terms of the contract was made a necessary means of performance, the promisor will be excused, unless he either expressly agreed in the contract to assume the risk of performance, whether possible or not, or the impossibility was due to his fault."

291 Va. at 53-54, 781 S.E.2d at 177-178 (quoting *Housing Auth. of Bristol*, 183 Va. at 72, 31 S.E.2d at 276; and citing Restatement (Second) of Contracts §§ 261 & 264 (1981)) (footnotes omitted).  The County's removal of the cap on FAR presented such a change relative to the performance of the FAR formula.  Thus, the circuit court was also correct in sustaining Capital One's impossibility defense, as asserted in its Plea in Bar and Motion for Summary Judgment, to WG Land's claims that Capital One breached the FAR formula.[12]

---

[12] Because, for the reasons discussed *infra*, we agree with the circuit court's construction of the FAR formula and application of the impossibility doctrine, which negates WG Land's allegations of breach of contract in Counts II and III, we need not address WG Land's assignments of error directed at the circuit court's rulings setting forth additional grounds for dismissing Counts II and III.

In addition, WG Land failed to preserve the argument, asserted in this appeal as part of its challenge to the circuit court's application of the impossibility doctrine, that evidence of Capital One's lobbying efforts showed that Capital One caused or contributed to the County's removal of the FAR cap, and this should preclude the impossibility doctrine's application.  At trial, WG Land only argued, after the dismissal of its claims, that Capital One's lobbying efforts caused or contributed to the impossibly of performance of the FAR formula, and this should preclude Capital One from receiving attorney's fees.  Accordingly, pursuant to Rule 5:25, we will only consider WG Land's argument directed at Capital One's lobbying efforts in that context, as discussed in our review of the circuit court's award of attorney's fees to Capital One in Part II.C., *infra*.

16

2.

It is undisputed that the parties to the Agreement executed in 2000 included the FAR formula in § 28.7(b) of the Agreement in anticipation of the extension of the Metro rail system to Tysons Corner. They anticipated that this extension would result in an increase in the development density, i.e., FAR, permitted by the County when properties like the Capital One Property and Neighboring Properties located near a new Metro rail station would be included within a Metro Overlay district. Without an agreement to share in such increased development rights, however, either party could have effectively monopolized such rights by being the first to take the greatest advantage of them through a prompt plan of development. Accordingly, the parties provided in § 28.7(b) of the Agreement as follows:[13]

> If, as a direct result of the funding, design, potential extension and/or extension of Metro service to the Tysons Corner area, additional FAR is ever available to the [Capital One] Property as a result of either (i) the portion of the Fairfax County Comprehensive Plain entitled "Transit Station Areas" and attached hereto as Exhibit T (the "Existing Metro Overlay") or (ii) any amendment to the Existing Metro Overlay or any similar overlay district in the Fairfax Comprehensive Plan based on Metrorail (each, an "Amended Metro Overlay"), then [that FAR is to be fractionally shared by the parties, subject to the Capital One Property retaining the first 200,000 square feet, through an allocation determined under mathematical equations set forth thereafter in subsections A through D of § 28.7(b)].

The plain text of § 28.7(b) thus addresses FAR that becomes available to the Capital One Property under the County Plan. It specifically covers "additional FAR [that] is ever available to the [Capital One] Property *as a result of* either (i) . . . the Existing Metro Overlay . . . or (ii) . . . an Amended Metro Overlay." (Emphasis added.) Further, there can be no question that the

---

[13] Because the FAR formula in § 28.7(b) of the Agreement is identical to its recitation in ¶ 4 of the Declaration, our analysis of § 28.7(b) is equally applicable to ¶ 4.

17

parties clearly understood what a Metro Overlay consisted of in relation to FAR under the County Plan because they attached and incorporated the 2000 Metro Overlay to the Agreement as an exhibit, referring to it as the "Existing Metro Overlay." By doing so, they provided an example of how additional FAR could become "available" to the Capital One Property by its inclusion within a Metro Overlay district. If that turned out to be the Existing Metro Overlay, then the share of FAR that the owner of the Capital One Property would be required to allocate to West*Group or its successor would be determined by a mathematical equation set forth in the FAR formula using the Existing Metro Overlay's fixed numerical caps on FAR ranging from 1.0 to 1.5.[14] Otherwise, the numerical caps set forth in "any amendment to the Existing Metro Overlay or any similar overlay district in the Fairfax Comprehensive Plan based on Metrorail (each, an 'Amended Metro Overlay')" would be equally applicable, as provided in the FAR formula. In this way, each party's interest in the fractional share of the "additional FAR" would be established.

The FAR formula thus depends on the existence of the FAR set forth on the face of the Existing Metro Overlay or an Amended Metro Overlay as a mathematical variable for calculating the amount of "available" FAR to be allocated to West*Group or its successor by the owner of the Capital One Property. Utilizing the numerical cap on FAR from a Metro Overlay is therefore the only way to calculate the mathematical equations for that determination under the FAR formula's express design.

---

[14] More specifically, the County's 2000 Metro Overlay attached to the Agreement as Exhibit T and referred to in the FAR formula as the "Existing Metro Overlay" capped the FAR for property like the Capital One Property, in terms of proximity to the expected location of one of the new Metro stations, at 1.5 within 1000 feet of a Metro station and 1.0 between 1000 and 1600 feet away.

Ten years later, the County passed the Amended Metro Overlay under the 2010 Plan, and, for the first time, removed the FAR cap for the area in which the Capital One Property and Neighboring Properties were located. This Amended Metro Overlay expressly stated, "no individual site within [1/4 mile of a Metro station in Tysons Corner] should be subject to a maximum FAR." Instead, pursuant to this Amended Metro Overlay, "the intensity of redevelopment projects within 1/4 mile of [those] Metro stations should be determined through the rezoning process." Without a numerical cap on FAR, the Amended Metro Overlay provided no numerical variable necessary for calculating the amount of "available" FAR to be fractionally shared under the FAR formula. As the circuit court characterized it, absent a cap on FAR, the numerical value of the "additional FAR" that was then "available" under the terms of the Amended Metro Overlay was "infinity," which is not "a numerical value capable of being multiplied." In this context, as Capital One aptly states on brief, "[f]ractions of infinity, or any unlimited quantity, are mathematical nonsense."

The Amended Metro Overlay thus "change[d] . . . the character of [the "available" FAR] to which the [Agreement] related [and] by the terms of the [Agreement] was made a necessary means of performance," rendering the FAR formula under the Agreement impossible to calculate and perform. *Hampton Rds. Bankshares, Inc.*, 291 Va. at 53-54, 781 S.E.2d at 178.

Challenging this construction of the FAR formula under § 28.7(b) and conclusion as to the Amended Metro Overlay's effect upon it, WG Land proposes a reading of the FAR formula that is simply unsupported by its plain language. WG Land asserts that the additional FAR available to the Capital One Property contemplated by the parties under the FAR formula was that which might become available through a rezoning application submitted to the County by

19

the owner of the Capital One Property. But the FAR formula says nothing about additional FAR becoming available in such a manner. The FAR formula is, instead, based on additional FAR that might become available under a Metro Overlay, through an increase in the cap on FAR—which cap, again, was eliminated by the Amended Metro Overlay in 2010 and thereby rendered the FAR formula impossible to perform.

The Agreement specifically addresses an increase in FAR for the Capital One Property based on a rezoning application not in § 28.7(b), but rather in § 28.7(c). After setting forth the FAR formula in § 28.7(b) as an exception to the eight-year limitation on the right of the owner of the Capital One Property to seek additional FAR (as set forth in the first paragraph of § 28.7), the Agreement provides in § 28.7(c) that such owner "shall have the right to seek a re-zoning . . . for additional FAR to take effect following the expiration of the eight (8) year period." As the circuit court correctly reasoned in rejecting WG Land's reading of § 28.7, "if, as WG Land argues, seeking approval [of a rezoning application] is the only practicable way to obtain additional FAR, there would be no need to have two separate paragraphs addressing the density limitation."

Furthermore, as the circuit court also accurately observed, grafting § 28.7(c)'s rezoning application procedure onto § 28.7(b) under GW Land's view of these provisions would yield an irrational procedural quagmire for obtaining County approval for new development. That procedure would require Capital One to create a development plan, submit it for County approval, gain approval, and then immediately go back to the drawing board to give up to some other entity a portion of whatever development rights Capital One was seeking to implement with its initially approved development plan. Capital One would then have to return to the County a second time just to obtain approval to build some partial version of its original plan,

20

and then a third time, and so on, after giving up a portion of the approved development rights each time. That is surely not what the parties intended. *See Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 200, 796 S.E.2d 549, 555 (2017) ("Our presumption is always that the parties 'were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons.'" (quoting *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001))).

WG Land also disputes that the Amended Metro Overlay actually removed the cap on FAR for the Capital One Property despite the fact it expressly states that "no" such property, with its proximity to one of the new metro rail stations in Tysons Corner, is any longer "subject to a maximum FAR." WG Land's assertions that this provision is contradicted and superseded by other criteria in the Amended Metro Overlay that effectively equate to a site-specific cap on FAR is without merit.

Finally, we reject WG Land's argument that the Amended Metro Overlay, in effecting a change in zoning, should not be allowed to nullify or abrogate private contract rights by rendering the FAR formula unenforceable. Citing *Ault v. Shipley*, 189 Va. 69, 75-76, 52 S.E.2d 56, 59 (1949), WG Land relies here on the legal principle that when a restrictive covenant limits property to a certain use, a later zoning change that makes the property eligible for a different use will not, in most cases, destroy the covenant. That is not what occurred in the present case. Here, the Agreement specifically incorporated the Metro Overlays in the County Plan, i.e., the existing one in 2000 and future ones. By design, changes in the Metro Overlays would change the FAR available to each party. The impossibility arose when the Amended Metro Overlay removed the cap on FAR from the FAR formula, leaving it unworkable, and therefore unenforceable.

21

C. Attorney's Fees

WG Land makes three arguments challenging the circuit court's award of attorney's fees to Capital One under the Agreement's fee-shifting provision at § 32.[15] First, WG Land asserts that the fact Capital One prevailed on its impossibility defense as to the FAR formula means that § 32 was rendered unenforceable. In this assertion, WG Land is mistaken. WG Land relies on the legal principle that when a contract is held impossible to perform, it is voided.[16] That principle, however, is completely inapposite to § 32. As the circuit court correctly determined, citing *Osler Inst., Inc. v. Forde*, 386 F.3d 816, 818 (7th Cir. 2004), where the provision at issue, which is rendered impossible to perform, is not the "basic purpose" of the contract, only that provision may be voided—not the entire contract. *Id*.; *see also Carabetta Enters. v. United States*, 482 F.3d 1360, 1365 (Fed. Cir. 2007) (explaining doctrine of partial impossibility); *Daburlos v. Commercial Ins. Co*., 521 F.2d 18, 23 n.7 (3rd Cir.1975) (same); *see generally*, James P. Nehf, 14-75 Corbin on Contracts § 75.7 (Joseph M. Perillo ed., rev. ed. 2017). Here, the basic purpose of the Agreement was the sale of the Capital One Property, including the transfer of 1.1 million square feet of FAR, from West*Group to Capital One Financial, which occurred nearly 15 years prior to WG Land's institution of the present suit against Capital One arising from the dispute over enforcement of the FAR formula. While the FAR formula—with its allocation of density development rights that may or may not have become available in the future as of the time of the execution of the Agreement—was certainly significant, it was not the

---

[15] *See* note 6, *infra*.

[16] *See, e.g*., *Smith v. McGregor*, 237 Va. 66, 75, 376 S.E.2d 60, 65 (1989) (holding an executory real estate contract to be void where sellers could not perform a material condition precedent to contract's execution and purchaser did not agree to waive it) (cited in WG Land's opening brief).

basic purpose of the Agreement; and WG Land, of course, has not sought to unwind the Agreement. Furthermore, the Agreement's fee-shifting provision is saved under the Agreement's severability clause at § 22, which provides that "[t]he provisions of [the Agreement] shall be deemed severable, and the invalidity or unenforceability of any one or more provisions hereof shall not affect the validity or enforceability of the other provisions hereof." *See Reistroffer v. Person*, 247 Va. 45, 49-50, 439 S.E.2d 376, 379 (1994) (holding that contractual fee-shifting provision survived under severability clause); *Vega v. Chattan Assocs.*, 246 Va. 196, 199-202, 435 S.E.2d 142, 143-45 (1993). (holding that contractual "deposit-refund and cost-reimbursement provision" survived under severability clause).

Second, WG Land argues Capital One was not entitled to an award of attorney's fees because Capital One, through its lobbying efforts with the County, "actively worked to create the impossibility" of contract enforcement upon which it relies. WG Land cites to *Appalachian Power Co. v. John Stewart Walker, Inc.*, 214 Va. 524, 534-35, 201 S.E.2d 758, 766 (1974) as support for the proposition that a party who created or contributed to the circumstances giving rise to the impossibility is generally not allowed to rely upon it. The rule, accurately stated, is that the "defense of impossibility of performance . . . is not available to a promisor when 'the impossibility was due to his fault.'" *Id.* (quoting *Housing Auth. of Bristol*, 183 Va. at 72, 31 S.E.2d at 276); *see also Hampton Rds. Bankshares, Inc.*, 291 Va. at 53-54, 781 S.E.2d at 177-178. To apply this principle here as WG Land urges, we would have to hold that Capital One was not entitled to attorney's fees because it was Capital One's "fault" that the County removed the cap on FAR, which resulted in the impossibility of the FAR formula's calculation and performance. We refuse to do so. It cannot be said that Capital One was at "fault" for the legislative action taken by the County's governing board. "Fault" in the context of the

23

impossibility doctrine implies the violation of a tort or contract duty, which WG Land has failed to either allege or establish with regard to Capital One's lobbying efforts. *See Appalachian Power Co.*, 214 Va. at 534-35, 201 S.E.2d at 766 (assessing "fault" in this context as an issue of whether a party had committed a "breach of contractual duty which contributed to impossibility of performance"). Indeed, as Capital One argues on brief, it "had no tort or contract duty to stay silent as the County created a plan that would affect its property. Additionally, the lifting of the FAR cap in the 2010 County Plan benefited *all* entities that own or control land within 1/4 mile of a Metro station—including WG Land itself." (Emphasis in original.)

Third, WG Land argues that Capital One was not the "prevailing party" under § 32 of the Agreement based on the circuit court's observation that the impossibility of the FAR formula's enforcement could be temporary in light of the fact that the County might re-impose a cap on FAR at some point in the future. While that is certainly a possibility, Capital One was nevertheless unmistakably the prevailing party in this case. WG Land brought three claims against Capital One, the circuit court granted judgment in Capital One's favor on all three, and we are affirming that judgment. Thus, Capital One "prevail[ed]" in "[an] action . . . brought by either party against the other" under the plain meaning of § 32.

### III.

For the above reasons, we affirm the judgment of the circuit court in sustaining Capital One's demurrer as to Count I, sustaining its plea in bar and granting its motion for summary judgment as to Counts II and III, and awarding attorney's fees, costs and expenses to Capital One.

*Affirmed*.

24