PRESENT:  All the Justices

MARILYN EHRHARDT, ET AL.

OPINION BY
v.  Record No. 201160                                JUSTICE S. BERNARD GOODWYN
December 2, 2021
SUSTAINEDMED, LLC

FROM THE CIRCUIT COURT OF THE COUNTY OF FAIRFAX
Michael F. Devine, Judge

In this appeal, we consider whether the circuit court's award of attorneys' fees as well as

expenses and costs exceeded the maximum indemnification amount allowed under an indemnity

agreement.

BACKGROUND

On November 17, 2009, Marilyn Ehrhardt, John Ehrhardt, Stephen Mallete, Michael

High, Victor Su, and Michael Sutton (collectively, the Sellers) entered into a stock purchase

agreement (the SPA) for the sale of their collective shares in Cyfluent, Inc. (Cyfluent) to

SustainedMED, LLC (SustainedMED).  The SPA also included an attachment showing that

Cyfluent had a contract with Hygea Health Network, Inc. (Hygea).  Per the Sellers'

representations during the negotiations of the sale, SustainedMED was led to believe that Hygea

owned a network of physician practices with 165,000 members, and that the Hygea contract

guaranteed Cyfluent revenue of $800,000 per month, substantially increasing the value of the

Cyfluent stock being sold to SustainedMED.

The total purchase price for the sale of the Cyfluent stock to SustainedMED was

$4,900,000.  SustainedMED paid $2,100,000 in cash and $2,800,000 through the issuance of

several promissory notes (collectively, the Promissory Notes) payable to the Sellers.

After closing on the purchase, SustainedMED subsequently learned that Hygea owns, at

best, only four physician practices, with roughly 100 members, and that its contract with

Cyfluent did not produce any significant revenue. Thus, contrary to the representations which had been made to SustainedMED by the Sellers, neither Cyfluent nor SustainedMED ever received any significant value from the Hygea contract.

The SPA includes an Indemnity Agreement which requires the Sellers to indemnify SustainedMED for losses resulting from inaccuracies in or breach of any representations or warranties made by the Sellers. Consequently, SustainedMED sent the Sellers a direct indemnity claim notice, claiming that representations and warranties concerning the revenue which would be produced by the Hygea contract had been breached. By this time, SustainedMED had paid $700,000 on the Promissory Notes, but still owed the Sellers $2,100,000 for the purchase of the Cyfluent stock, pursuant to the terms of the Promissory Notes and the SPA. In its notice, SustainedMED stated that "[p]ursuant to Section 10.5(d) of the [SPA]," it was "withholding payment under [the] Promissory Note[s]" until its indemnity claim concerning the misrepresentations was resolved. The Sellers rejected SustainedMED's indemnity claim.

On January 12, 2011, SustainedMED filed suit against the Sellers in the Circuit Court of Fairfax County, with Count I of the complaint alleging breach of the Indemnity Agreement because of the misrepresentations made concerning the Hygea contract, and Count II alleging fraud in the inducement. In Count III of the complaint, SustainedMED sought a declaratory judgment that SustainedMED was "entitled to withhold payment under the Promissory Notes and use the Promissory Notes to satisfy its indemnity claim against [the Sellers]." In Count III, it also asserted that "pursuant to Section 10.5(d) of the SPA, Plaintiff may use the Promissory Notes to satisfy an indemnity claim of Plaintiff that is finally determined to be due and owing by [the Sellers]." Additionally, SustainedMED sought recovery of its costs and reasonable attorneys' fees.

2

The Sellers filed a responsive pleading that included their answer, additional defenses and pleas, a motion to crave oyer, a demurrer, counterclaims, and demands for attorneys' fees and costs.

The terms of the SPA outline the indemnity agreement between the parties:

**10.    INDEMNIFICATION.**

**10.1**    Indemnification by Sellers.    Sellers shall jointly and severally indemnify and hold [SustainedMED] harmless against and from and in respect of any and all Losses which are incurred by virtue of or result from (a) (i) the inaccuracy in or breach of any representation or warranty made by any Seller in this Agreement or any certificate executed in connection herewith . . . or (b) enforcing [SustainedMED's] indemnification rights provided for hereunder.

. . . .

**10.5**    Certain Limitations on Indemnification Obligations.

(a) Except as otherwise expressly provided in this Section 10, [SustainedMED] shall not be entitled to receive any indemnification payments under Section 10.1 based upon any inaccuracy in or breach of any representation or warranty, until the aggregate amount of Losses incurred by [SustainedMED] exceeds $25,000.00 (the "Deductible Amount"), and thereafter Sellers shall be liable for all Losses over the Deductible Amount.

(b) The maximum aggregate amount of indemnification payments which [SustainedMED] shall be entitled to receive under Section 10.1 based upon any inaccuracy in or breach of any representation or warranty shall not exceed $4,900,000.00.

. . . .

(d) [SustainedMED], at [its] sole election, may use the Promissory Notes to satisfy any indemnity claim of [SustainedMED] hereunder that is finally determined to be due and owing by any Seller. To the extent a claim is pending at the time that a payment is due under the Promissory Notes, [SustainedMED] shall be entitled to withhold payment under the Promissory Notes until such claim is resolved.

Section 1.1 of the SPA defines losses as "all actions, suits, proceedings, hearings, investigations, charges, complaints, claims, demands, injunctions, judgments, orders, decrees,

3

rulings, damages, dues, penalties, fines, costs, amounts paid in settlement, liabilities, obligations, Taxes, Liens (other than Permitted Liens), losses, expenses, and fees, including court costs and reasonable attorneys' fees and expenses."

SustainedMED's claim for breach of the contract's Indemnity Agreement and its request for declaratory judgment, as well as the Sellers' counterclaims for breach of contract, were heard at a bench trial, separate from the jury trial held regarding SustainedMED's claim of fraud in the inducement.[*] At the end of the six-day bench trial, the circuit court ruled in favor of SustainedMED, finding that the Sellers breached the terms of the Indemnity Agreement and that SustainedMED was entitled to indemnification for the losses caused by the Sellers' misrepresentations. It also granted SustainedMED judgment on its declaratory judgment claim.

In essence, it required that the purchase price of the stock, $4,900,000, be returned to SustainedMED pursuant to the terms of the Indemnity Agreement. The circuit court awarded SustainedMED damages in the amount of $2,775,000, which represented the $2,800,000 SustainedMED had already paid to the Sellers for the stock, less the $25,000 deductible mentioned in Section 10.5(a) of the SPA, and it ruled that the $2,100,000 amount SustainedMED owed to the Sellers on the Promissory Notes be "extinguished." It explained that "[t]he effect of this judgment is that SustainedMED will have acquired Cyfluent, which had no value as an ongoing concern, and will have paid nothing for it."

_____

[*] Pursuant to the terms of the SPA, SustainedMED waived its right to a jury trial concerning any disputes arising under that contract. However, the circuit court determined that SustainedMED was entitled to a jury trial on its fraud in the inducement claim, and a jury trial was held on that claim in which the jury found in favor of SustainedMED. The Sellers subsequently filed a motion to set aside the jury's verdict, and the circuit court granted the motion, holding that SustainedMED failed to establish all the elements of fraudulent inducement. That claim is not relevant to this appeal.

The circuit court memorialized its bench ruling in an order in which it reiterated its award in favor of SustainedMED on its indemnification and declaratory judgment claims.

Pre-trial, the parties agreed that litigation regarding attorneys' fees and costs would follow resolution of the parties' other claims; SustainedMED subsequently requested an award of its attorneys' fees as well as litigation expenses and costs incurred in pursuing its indemnity claim pursuant to the terms of Section 10.1 of the SPA. The circuit court thereafter conducted a hearing on the issue. SustainedMED argued that the indemnification award was only $2,775,000, which was more than $2,000,000 below the SPA's indemnification cap, and it presented evidence concerning the attorneys' fees and costs incurred in the litigation of all its claims against the Sellers. The Sellers argued that, in addition to the $2,775,000 cash award, the extinguished liability on the Promissory Notes formed part of the indemnification claim relief awarded to SustainedMED, and thus the value of the discharged Promissory Notes (a principal amount of $2,100,000.06) should be included in the computation of the amount of the payments SustainedMED was allowed to recover under the indemnification cap in the SPA for attorneys' fees and costs. They also claimed that SustainedMED's evidence failed to separate out the amounts paid (losses incurred) in pursuing the indemnity claim from those funds expended in pursuing SustainedMED's other claims against the Sellers.

At the end of the hearing, the circuit court took the matter under advisement. Over three years later, and without additional argument or explanation, the circuit court awarded SustainedMED $972,323.50 in attorneys' fees and $64,225 in litigation expenses and costs.

The Sellers appeal. We granted one assignment of error:

The trial court misinterpreted the Stock Purchase Agreement and failed to follow Virginia law regarding its awards to SustainedMED of attorneys' fees, expenses, and costs. The court reversibly erred in making such awards because they exceeded the Stock Purchase Agreement's cap on indemnity claim losses, and the

5

awards were not limited to specific indemnity claims on which SustainedMED succeeded.

ANALYSIS

This Court "review[s] issues of contract interpretation de novo." *City of Chesapeake v. Dominion SecurityPlus Self Storage*, 291 Va. 327, 334 (2016).

This Court construes a contract "as written, without adding terms that were not included by the parties." *Id.* at 335. The fundamental question before this Court is "what did the parties agree to as evidenced by their contract, and the guiding light for such construction is the intention of the parties as expressed by them in the words they have used." *RECP IV WG Land Investors LLC v. Capital One Bank (USA), N.A.*, 295 Va. 268, 283 (2018) (citation and internal quotation marks omitted). When a contract is clear and unambiguous, the "[w]ords that the parties used in a contract are normally given their usual, ordinary, and popular meaning." *Id.*

Section 10.5(a) of the SPA entitles SustainedMED to seek indemnification for "losses" resulting from any inaccuracy in or breach of any of the Sellers' representations. Section 1.1 of the SPA defines losses rather expansively as "all actions, suits, proceedings, . . . damages, dues, penalties, fines, costs, amounts paid in settlement, liabilities, obligations, . . . losses, expenses, and fees, including court costs and reasonable attorneys' fees and expenses." Section 10.5(b) of the SPA limits the maximum aggregate amount that SustainedMED is entitled to receive under the Indemnity Agreement, based upon any inaccuracy in or breach of any representations or warranty, to $4,900,000, the amount it paid for the stock.

Section 10.5(d) allows SustainedMED to elect to use forgiveness of the Promissory Notes in satisfaction of its indemnification claims against the Sellers. In requesting declaratory relief in its complaint, SustainedMED relies on Section 10.5(d) of the SPA, emphasizing that it is entitled

6

to use the Promissory Notes in satisfaction of its indemnification claims, and asking the circuit court to grant declaratory relief that SustainedMED is "entitled to withhold payment under the Promissory Notes and use the Promissory Notes to satisfy its indemnity claim."

The circuit court concluded that SustainedMED was entitled to repayment of what it paid for the Cyfluent stock as indemnification for the losses caused by the inaccurate statements and breach of the representations made by the Sellers. SustainedMED paid $4,900,000 for the stock through cash payments and Promissory Notes. The circuit court stated that it wanted to provide SustainedMED relief so that SustainedMED "will have paid nothing for [the stock]."

In its declaratory judgment claim, SustainedMED asked that the outstanding Promissory Notes be used to satisfy its indemnity claim. In its order, the circuit court specifically stated that it granted the declaratory relief sought by SustainedMED. It did so by extinguishing any liability that SustainedMED still had to pay pursuant to the $2,100,000 in Promissory Notes used to pay for the stock. In other words, as requested by SustainedMED, the extinguishment of the Promissory Notes was used to satisfy, in part, SustainedMED's indemnification claim. The circuit court awarded the remainder of the indemnification claim, regarding SustainedMED's payment for the stock, through entry of a judgment in the amount of $2,775,000.

The scope of Section 10.5(b) and the definition of losses in Section 1.1 of the SPA allows SustainedMED to recover attorneys' fees and the costs of litigation incurred in pursuing its indemnification claim, as long as the total indemnification that SustainedMED is awarded does not exceed the indemnification cap stated in Section 10.5(b). In this case, the circuit court awarded SustainedMED $2,775,000 in cash damages and further awarded it forgiveness of exactly $2,100,000.06 in Promissory Notes obligations. We agree with the Sellers that the value of the discharged Promissory Notes is payment for indemnification amounts that SustainedMED

was entitled to receive pursuant to the terms of the SPA. We further conclude that the relief requested by SustainedMED in its complaint, and the amount of SustainedMED's extinguished debt, should be included in the computation of the aggregate total amount of indemnification SustainedMED was entitled to receive under the SPA's indemnification cap. Thus, SustainedMED had been awarded a total of $4,875,000.06 to satisfy its indemnification claims prior to the circuit court considering its claim for losses resulting from the payment of attorneys' fees and litigation costs. Under Section 10.5(b) of the SPA, the limitation cap for indemnification is $4,900,000.

From the foregoing, we conclude that, because of the indemnification cap expressed in the SPA, the maximum award of attorneys' fees and costs that SustainedMED can recover, in relation to the breach for which SustainedMED is being indemnified, is $24,999.94. As a result, the circuit court erred in awarding SustainedMED more than $24,999.94 in attorneys' fees and costs.

However, the evidence in the record is sufficient to support the circuit court's award of attorneys' fees and costs to SustainedMED, and it is sufficient to support a conclusion that the attorneys' fees and costs incurred by SustainedMED in pursuing its indemnity claim were at least $24,999.94. Therefore, we will reduce the amount recoverable by SustainedMED for attorneys' fees and costs incurred in pursuing its indemnity claim to $24,999.94.

CONCLUSION

In summary, for the reasons stated, we hold that the circuit court erred in awarding SustainedMED attorneys' fees and costs in excess of $24,999.94 on its indemnification claim because of the SPA's indemnification cap of $4,900,000. We therefore will reverse the judgment of the circuit court concerning the amount of the attorneys' fees, litigation costs, and

8

expenses awarded to SustainedMED.  In addition, we will award SustainedMED attorneys' fees and costs in the total amount of $24,999.94, and enter final judgment.

*Reversed and final judgment.*