PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ.[1]

CITY OF CHESAPEAKE

v.  Record No. 150328

OPINION BY
JUSTICE CLEO E. POWELL
April 28, 2016

DOMINION SECURITYPLUS SELF
STORAGE, L.L.C.

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

In this appeal from a condemnation award, we consider whether the circuit court erred in admitting certain expert testimony on damages, in awarding damages to the landowner for loss of visibility of its property, and in awarding damages as a result of loss of direct access to the highway abutting the property.

## I.  BACKGROUND

Dominion SecurityPlus Self Storage, L.L.C. ("Dominion") operates a self-storage facility located on Dominion Boulevard in the City of Chesapeake ("City").  In 2001, Dominion's predecessors in interest, Nathan and Margaret Eure (the "Eures") applied to the City's Planning Commission for permission to subdivide their six-acre parcel abutting Dominion Boulevard.  At the time, Dominion desired to purchase 4.5 acres of the Eures' property to develop a self-storage facility.  The Eures hired engineer Robert Kellam ("Kellam") to prepare a site plan for the self-storage facility.  The City initially rejected the site plan and required the Eures to obtain a variance because the proposed 4.5 acre parcel lacked sufficient frontage on Dominion Boulevard. The City also required that the property be subdivided and that the subdivision plat reserve a 50-foot right of way in favor of the City for purposes of future expansion of Dominion Boulevard.

---

[1] Justice Roush participated in the hearing but not in the decision of this case.  The expiration of her term on the Court preceded the issuance of this opinion.

The Eures agreed to the City's requests in order to obtain site plan approval. A subdivision plat was prepared that contained Note 7, as required by the City. Note 7 provided:

> The owner and/or their heirs, assigns, lessee, grantees or successors in interest agrees to reserve for future purchase by the City the area hereby designated on the plat and shall convey same to the City by deed containing general warranty and English Covenants [of] Title. The purchase value of said area is to be based on the fair market value as of the date the City exercises its right to purchase the area designated as reserved with no compensation for any improvements placed within the area. The owners agree that it shall not make or have any claims for damage to the said improvements or damages to the residue [of] the owners' property by reason of the said purchase.

The Planning Commission granted the variance related to the frontage on Dominion Boulevard. In a letter addressed to the Eures' attorney, the Planning Commission conditioned its approval of the variance on the stipulation that the existing access to Dominion Boulevard may be closed in the future and that an access road would provide road frontage to the rear of the property. Kellam, the engineer, told Dominion about the stipulation.

The subdivision plat containing Note 7 was recorded in the land records of the City on December 27, 2001. On January 14, 2002, a deed was recorded conveying to Dominion the 4.5 acre parcel "subject to all of the terms, conditions, rights, obligations, restrictions, easements and reservations set forth in the duly record[ed] deeds, plats, declarations and other instruments constituting constructive notice in the chain of title to the property."

In 2011, the Chesapeake City Council, by resolution, authorized the acquisition "by purchase or condemnation" of property necessary for the Dominion Boulevard Improvements Project (the "Project"). The Project, which was intended to spur development in the southern part of the City, involved the widening of Dominion Boulevard from a two-lane roadway to a

2

multi-lane, limited access highway, and the replacement of a drawbridge across the Elizabeth River with a new, fixed-span bridge that would be 95 feet at its apex. The City determined that the Project required it to either purchase from Dominion or condemn the 50-foot right of way reservation, some additional land in fee, a permanent utility easement, a permanent waterline easement, and a temporary construction easement.

After attempts to purchase the property and easements from Dominion failed, the City, on March 12, 2012, filed a certificate of take in the amount of $39,310. The fee take consisted of 4,943 square feet, which was entirely in the area subject to the reservation under Note 7. Also included in the reservation area was the 345 square feet taken for the waterline easement. The permanent utility easement contained 3,180 feet, of which 1,549 square feet were in the reservation. The temporary construction easement consisted of 1,898 square feet, of which 1,361 feet were within the reservation. Accordingly, 1,631 square feet of the permanent utility easement and 537 square feet of the temporary construction easement were not within the reservation.

Prior to the Project, Dominion's entrance was at grade with Dominion Boulevard. As part of the Project, Dominion Boulevard was raised more than 30 feet above Dominion's property. No part of the widened Dominion Boulevard included property taken from Dominion as part of the condemnation, as the City already owned the right of way needed for the widened highway.[2] Because of the raised elevation of the roadway, Dominion's storage facility is no longer visible from Dominion Boulevard. In addition, Dominion no longer has direct access to Dominion Boulevard. Instead, access to Dominion's self-storage facility is now achieved by way of an access road reached by exiting Dominion Boulevard.

[2] The reservation area taken in the condemnation was used for utility easements and to construct a new service road to provide access to the properties that had direct access to Dominion Boulevard prior to the condemnation.

3

On May 7, 2012, the City filed its petition for condemnation in the circuit court, asking for a determination of just compensation for the property taken and damages to the residue. Dominion filed its answer and grounds of defense in which it alleged that it was not bound by the 50-foot right of way reservation because it was "an unlawful exaction of property without due process which action is beyond the authority of [the City]." Dominion also alleged that the condemnation resulted in "a reduction in market value to the remaining property due to loss of reasonable access, visibility, and other causes."

On August 6, 2012, the City filed a motion in limine to exclude all evidence of damage to the residue resulting from the take of land and easements in the reservation. The City argued that Note 7 constituted a valid and enforceable contract between the City and Dominion by which Dominion agreed to waive any damages to the residue caused by the purchase or take of the land in the reservation. In response, Dominion argued that the reservation was an unconstitutional taking without due process, or, alternatively, was void and unenforceable. The circuit court granted the City's motion in limine in part, ruling that Dominion "is only precluded from arguing damage to the residue because the 'sale of the reserved area' resulted in a reduction of the total size of the remainder of [Dominion's] real property." The circuit court explained:

> [A]t the time of entering into the agreement neither the City nor [Dominion] had any idea what or how the new road would be constructed. The only foreseeable damage was the existence of the residue without the reserved area. As such, [Dominion] is precluded from claiming damage to the residue solely because it is now 4,943 square feet less than it would have been had the City not purchased the land.

The circuit court also concluded that the 2,168 square feet outside the reservation acquired for the utility easement and the construction easement were not subject to Note 7.

On May 28, 2013, the City filed a second motion in limine to exclude Dominion's evidence of damage to the residue caused by the loss of visibility of Dominion's self-storage

4

facility and signage from Dominion Boulevard. The City argued that Virginia has never recognized loss of visibility as a compensable item of damage in a partial taking case. Further, the City maintained, any loss of visibility to the residue or signage did not flow directly from the take. Instead, the loss of visibility was caused by the elevation of Dominion Boulevard, which was not constructed on any part of the property taken from Dominion. In response, Dominion argued that it is entitled to compensation for damages to the residue arising from the Project as a whole, even if the damages did not result directly from the take. The circuit court denied the City's second motion in limine on November 7, 2013, explaining that:

> It appears to the [c]ourt that any claim of loss of visibility arises from the project as a whole and [Dominion's] residue property is being impacted by the project. Therefore, the [c]ourt will permit [Dominion] to offer evidence of loss of visibility in support of its claim of damage to the residue arising from the project as a whole.

On August 21, 2014, the City filed a third motion in limine to prevent Dominion from presenting evidence of damages to the residue resulting from loss of direct access to Dominion Boulevard. The City maintained that in return for the grant of a variance from frontage requirements, the Eures stipulated that the property's access to Dominion Boulevard might be closed in the future. According to the City, the stipulation ran with the land and was binding on Dominion. Also, the City contended that the Planning Commission was authorized to place conditions on the grant of a variance for public road frontage, including a stipulation that access may be limited in the future. In opposition to the City's third motion in limine, Dominion argued that, when it acquired the property, its knowledge that the property might lose its direct access to Dominion Boulevard was irrelevant, because damages to the residue are to be determined as of the date of the take. Dominion further maintained that the Planning Commission had no authority to impose any conditions on the variance as to the frontage requirements. The circuit court denied the third motion in limine, finding that the stipulation was not valid.

5

On October 22, 2014, following a bench trial, the circuit court awarded Dominion $44,141 for the value of the fee take, and $2,156,789.18 for the damages to the residue, including loss of visibility and loss of direct access. The City appealed.

## II. ANALYSIS

On appeal, the City argues that the circuit court erred in allowing Dominion to present evidence of damages to the residue resulting from the condemnation of the fee take and the temporary and permanent easements within the area of the 50-foot right-of-way. "We review issues of contract interpretation de novo." Bailey v. Loudoun County Sheriff's Office, 288 Va. 159, 169, 762 S.E.2d 763, 766 (2014).

Note 7 provided, in relevant part, that:

> The owner and/or their heirs, assigns, lessee, grantees or successors in interest agrees to reserve for future purchase by the City the area hereby designated on the plat . . . . The owners agree that [they] shall not make or have any claims for damage to the said improvements or damages to the residue [of] the owners' property by reason of the said purchase.

The City maintains that Note 7 of the subdivision plat was a valid contract by which the landowner waived any damages to the residue as the result of the purchase or condemnation of the reservation area. Dominion responds that, in allowing evidence of damages to the residue contrary to Note 7, the circuit court "reached the right result . . . in part for the right reason." Dominion argues that Note 7 is not applicable because the City did not act pursuant to its terms. First, the City did not "purchase" the property within the reservation; the City took it by eminent domain. Second, the City took more area than contained within the 50-foot reservation. According to Dominion, "[a]s the City had no choice but to take more area, the trial court had no choice but to allow the landowner to present evidence of residue damage." We agree with the City.

6

The circuit court recognized that Note 7 created a valid contract between the City and the Eures that was binding on all subsequent owners of the 4.5 acre lot created by the subdivision, including Dominion. Nonetheless, the circuit court imposed a condition that the landowner waived only its right to claim damages that were foreseeable at the time of the recordation of the subdivision plat containing Note 7. The circuit court opined that, when the subdivision plat was recorded in 2002, the only foreseeable damage to the residue of the property as a result of future purchase of the reservation area was that the property would be smaller. Accordingly, the circuit court allowed Dominion to present evidence of damages to the residue for such matters as loss of visibility and loss of direct access.

Our resolution of this issue is governed by familiar principles:

> We construe [a contract] as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning.

Squire v. Virginia Hous. Dev. Auth., 287 Va. 507, 516, 758 S.E.2d 55, 60 (2014) (quoting Uniwest Constr. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010)). "Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed." Dewberry & Davis, Inc. v. C3NS, Inc., 284 Va. 485, 496, 732 S.E.2d 239, 244 (2012) (quoting Bank of Southside Virginia v. Candelario, 238 Va. 635, 640, 385 S.E.2d 601, 603 (1989)).

Pursuant to Note 7, the landowner waived "any claim for . . . damages to the residue [of] the owners' property by reason of the said purchase" (emphasis added). The parties to the contract did not impose a term of foreseeability on the landowner's waiver of damages to the residue, therefore, it was error for the circuit court to insert such a term into Note 7. See Lansdowne Dev. Co. v. Xerox Realty Corp., 257 Va. 392, 400-01, 514 S.E.2d 157, 161 (1999)

7

(holding that a court "will not insert by construction, for the benefit of a party, a term not express in the contract"). In this case, having waived "any claim for damages" the landowner's waiver was broad enough to include the damages to the residue sought by Dominion at trial, including loss of visibility and loss of direct access to Dominion Boulevard.

We are unpersuaded by Dominion's argument that Note 7 did not apply to the City's acquisition of Dominion's property because the City obtained the property by exercise of the City's power of eminent domain rather than by "purchase." Significantly, Dominion cites no authority in support of its argument. The City did offer to purchase the property. That offer was refused by Dominion. Therefore, the City proceeded to acquire the property through condemnation. In light of the fact that the City's attempts to purchase the property were rebuffed by Dominion, we conclude that Note 7 was applicable to the City's acquisition of the property within the reserved area by means of eminent domain.[3]

Similarly, we reject Dominion's argument that the waiver of damages contained in Note 7 was voided by the City's acquisition of some easements outside of the reserved area. As noted above, 1,631 square feet of the permanent utility easement and 537 square feet of the temporary construction easement were not within the reservation. Again, Dominion cites no authority in support of its argument that the waiver of damages to the residue contained in Note 7 was voided by the City's acquisition of property rights outside of the reserved area. The plain language of Note 7 limited its applicability to "damages to the residue [of] the owners' property by reason of the said purchase [of the reserved area]." Therefore, as the circuit court ruled, the "City's additional take of land [was] not governed by the agreement" and Note 7 did not apply to any take outside the reserved area. However, Dominion failed to present any evidence by which any

---

[3] A condemnor is required by law to make a bona fide, but ineffectual, effort to purchase the property prior to instituting condemnation proceedings. See Code § 25.1-204(A).

8

of over $2,100,000 in damages that the circuit court awarded could be apportioned to the City's take of a utility easement and a temporary construction easement outside of the area of reservation. Because of this failure of proof, the entire judgment for damage to the residue must be reversed.

Because our resolution of the first assignment of error is dispositive, we need not reach the remaining four assignments of error and reserve for another day the substantive questions raised by the parties as to whether and to what extent loss of visibility is a compensable damage to the residue in a condemnation proceeding in Virginia. See Blake v. Commonwealth, 288 Va. 375, 380, 764 S.E.2d 105, 107 (2014) (addressing only one assignment of error that is dispositive); DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 142 n.*, 670 S.E.2d 704, 705 n.* (2009) (same); Umstattd v. Centex Homes, G.P., 274 Va. 541, 545, 650 S.E.2d 527, 530 (2007) (same).

## III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court awarding Dominion damages to the residue in the amount of $2,156,789.18, which consisted of compensation for loss of visibility and loss of direct access, and enter final judgment in favor of the City on that claim.

Reversed and final judgment.