UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Raphael and Frucci
Argued at Arlington, Virginia


EFTAKHAR ALAM

MEMORANDUM OPINION* BY
v.      Record No. 1366-23-4      JUDGE STUART A. RAPHAEL
SEPTEMBER 10, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Robert C. Whitestone (Whitestone Young PC, on brief), for
appellant.

Katherine Quinlan Adelfio, Senior Assistant Attorney General
(Jason S. Miyares, Attorney General, on brief), for appellee.


In 2019, Eftakhar Alam pleaded guilty to rape under a plea agreement that postponed

sentencing for three years. The agreement provided that if Alam complied with the conditions

imposed during that three-year period, he could withdraw his guilty plea and plead guilty instead

to assault and battery. In 2021, the General Assembly enacted Code § 19.2-306.1. 2021 Va.

Acts Spec. Sess. I ch. 538. That statute lists ten "technical" violations of probation. It provides

that a trial court may not impose a sentence of incarceration for the "first technical violation" and

may impose a sentence not longer than 14 days for "a second technical violation." Code

§ 19.2-306.1(A), (C). At Alam's three-year sentencing hearing in 2022, the trial judge heard

evidence showing Alam's multiple violations of the plea agreement's conditions. The evidence

included journal entries by Alam's ex-wife that documented Alam's numerous trips to

Pennsylvania without the permission of his probation officer.

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

The trial court determined that Alam violated the plea agreement, forfeiting his opportunity to be convicted and sentenced based on the lesser charge. The court rejected Alam's claim that the violations were merely "technical" ones under Code § 19.2-306.1, finding that the newly enacted statute did not apply to Alam's earlier plea agreement. The court sentenced Alam based on his original guilty plea to rape. Finding no error and no abuse of discretion in any of the challenged rulings, we affirm.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

*Plea agreement*

In October 2019, Alam pleaded guilty to raping M.P., an intern at the company where Alam worked. Alam entered into a plea agreement with the Commonwealth under Rule 3A:8(c)(1)(C). Under that agreement, the judge would find Alam guilty but not sentence him. Instead, the "judge [would] continue the case for three years." After that three-year period, if Alam complied with nine express conditions, the Commonwealth would ask the court to (1) allow Alam to withdraw his guilty plea to rape, (2) enter a guilty plea to assault and battery, and (3) sentence Alam to 80 days in jail with credit for time served. The ninth condition required Alam to "[f]ollow *all* the terms and conditions of probation, including those set forth in Section 2.5 of the Local Rules and Preferred Practices of the 17th Judicial Circuit." (Emphasis

- 2 -

added.) Section 2.5 of those rules, in turn, specified 15 conditions of probation. Those terms required a probationer to report an arrest within three days and prohibited the probationer from leaving Virginia without the probation officer's permission.

Paragraph 19 of the plea agreement provided that if Alam should "violate one or more of the [nine] conditions," he would return to court "to be sentenced in the penalty range set out in paragraph 10 above." Paragraph 10 listed the potential punishment for "RAPE" as a term of imprisonment "for life or for any term not less than five (5) years."

At a hearing on October 2, 2019, the trial court accepted the plea agreement. The victim, M.P., attended the hearing and read a statement in support of the plea agreement. She wanted Alam "to confront and meaningfully interact with the harm that he has caused," but she did not "believe in locking people up in cages." She "hope[d] that an alternative to incarceration can be agreed upon." The trial court accepted the plea agreement "in deference to [M.P.]." The court found Alam guilty of rape but "decline[d] to sentence him [that] day," continuing the case for three years "for sentencing or other such disposition."

*Alam's return to court three years later*

When Alam returned to court on October 14, 2022, Alam's probation officer revealed that Alam had traveled to Pennsylvania without her permission. She added that Alam had been arrested in Pennsylvania and had failed to tell her about the arrest. The court continued the case for the probation officer to file a major-violation report documenting the violations she had discovered.

The court ordered Alam to show cause why his probation should not be revoked. A hearing date was set for December 9, 2022. The day before the show-cause hearing, Alam's probation officer filed a major-violation addendum. The addendum revealed that, after Alam took a polygraph examination, he admitted several other probation violations to his probation

- 3 -

officer. The violations included unsupervised contact with minors, unreported sexual contact, missing curfew, consuming alcohol, and using unmonitored internet devices. The probation officer noted that those transgressions violated the conditions of the plea agreement, the local rules, and the special instructions governing Alam's sex-offender treatment.[1]

*Show-cause hearing*

At the show-cause hearing on December 9, Alam argued that the violations in the major-violation report and addendum were merely "technical" violations under newly enacted Code § 19.2-306.1. The trial court responded that "[t]his isn't a violation of probation following disposition, this is a deferred disposition . . . [so] it's not governed by the revocation statute." The court viewed the question before it as "whether . . . to impose the conviction and [to] sentence him today."

Alam urged the court to extend his probation because there were "innocent explanations" to excuse the conditions his counsel "admitted that he violated." The court responded that the agreement called for Alam to "be 100 percent compliant with the deferral," but "he's not. The conditions were not met, that's where we are."[2] Alam insisted that only "substantial compliance" with the plea agreement was required, "[n]ot 100 percent compliance." But the court responded that paragraph 19 of the plea agreement was clear: violating one or more

---

[1] While the sex-offender special instructions are not in the record, condition three of Alam's plea agreement required Alam to "undergo a sex offender evaluation and follow any treatment and testing recommendations of [his] probation officer." Alam acknowledged that he "was subject to 21 of 24 special rules for sex offenders."

[2] Alam also asked to withdraw his guilty plea under paragraph 20 of the plea agreement. That paragraph provided: "I further understand that if the court rejects this plea agreement, I may withdraw my guilty plea and have my case tried before a jury with a different judge presiding." The court denied Alam's request. The court made clear that it had accepted the plea agreement in 2019. The issue for the court was whether to enforce the agreement and to sentence Alam for the crime of rape, considering his failure to comply with the plea agreement's conditions.

conditions meant that Alam would be sentenced for the crime of rape to which he had pleaded guilty.

Because Alam's counsel had not yet reviewed the major-violation addendum, the court continued the hearing until February 10, 2023. In the interim, Alam's probation officer filed a second major-violation addendum. The probation officer had received a letter from Alam's ex-wife's attorney, who wrote that Alam had resided in Pennsylvania throughout the period of his supervised release. The ex-wife had kept a journal detailing Alam's contacts with their four-year-old son. The addendum included the letter and about 50 pages from the ex-wife's journal.

At the February 10 hearing, Alam admitted that he had traveled out-of-state without permission and had failed to tell his probation officer about his arrest in Pennsylvania. Alam objected to the other violations noted in the addendum, arguing that they were based on unreliable hearsay.

The probation officer testified that Alam failed to tell her about his new charges, which she discovered when closing out Alam's case. She also testified that Alam admitted to additional violations after undergoing a polygraph examination.

Alam's ex-wife's attorney, Jon Bourdon, testified about the letter he sent to Alam's probation officer. Bourdon explained that he had advised Alam's ex-wife to keep a journal of any interactions with Alam, as Bourdon was representing her in the couple's divorce and child-support dispute. Bourdon sent the letter and journal entries to Alam's probation officer because the "outcome of this case has specific bearing on the custody, support, and welfare of the parties' minor child[]." The trial court found Bourdon's letter and the ex-wife's journal entries to have "value and credibility."

When Alam testified, he again admitted that he did not tell his probation officer about his arrest or travel to Pennsylvania. He denied having knowingly consumed alcohol, claiming that he had done so only "mistakenly."

The trial court found Alam in violation of the conditions of the plea agreement. The court declined to extend Alam's probation, noting that the original terms of the plea agreement represented "an extraordinary request . . . on a very serious charge." The case was continued for sentencing to May 12, 2023.

*Sentencing hearing*

Following Alam's allocution at the sentencing hearing, the court found that Alam had engaged in "deceptive and manipulative conduct." The court was "exceptionally concerned about Alam's ability to distinguish truth from a lie." The court recalled the victim's willingness to give Alam "the benefit of the doubt[,] not on the crime, but on [Alam's] ability to change." The court said it had accepted the plea agreement out of "deference" to the victim's "belief that [Alam] would change." But Alam had "not changed." The court sentenced Alam on the rape conviction to 25 years' incarceration with 13 years suspended.

ANALYSIS

Alam argues that the trial court erred by:

- failing to treat his violations of the conditions of his plea agreement as "technical" violations under Code § 19.2-306.1;

- holding him "to 100% compliance" with those conditions; and

- considering unreliable hearsay at the show-cause hearing.

We find no merit in those claims.

*A. Code § 19.2-306.1 does not apply (Assignment of Error 1).*

"A circuit court's interpretation of a plea agreement is governed by the law of contracts and is a matter of law subject to *de novo* review." *Bardales v. Commonwealth*, 71 Va. App. 737, 743

(2020). "To the extent that factual findings of the circuit court are part of the analysis, we cannot disturb [those] factual findings . . . unless they are plainly wrong." *Id.*

The trial court accepted Alam's guilty plea to rape under a plea agreement governed by Rule 3A:8. That rule "provides that a defendant and the Commonwealth may enter into an agreement that establishes a specific sentence as 'the appropriate disposition of the case.'" *Wright v. Commonwealth*, 49 Va. App. 58, 61 (2006) (quoting Rule 3A:8(c)(1)(C)), *aff'd*, 275 Va. 77 (2008).

Plea agreements are "contracts between a defendant and the Commonwealth." *Hubbard v. Commonwealth*, 80 Va. App. 384, 399 (2024). "[G]eneral principles of contract law apply to [all] plea agreements." *Thomas v. Commonwealth*, 303 Va. 188, 200 (2024) (second alteration in original) (quoting *Wright*, 275 Va. at 79); *see Bardales*, 71 Va. App. at 743. "One of the basic rules of construction of contracts is that the law in force at the date of making a contract determines the rights of the parties under the contract." *Everett v. Carome*, 65 Va. App. 177, 187 (2015) (quoting *Goldin v. Goldin*, 34 Va. App. 95, 105 (2000)). Thus, the law in effect when a plea agreement is made becomes "an implicit term of the plea agreement." *Smith v. Commonwealth*, 286 Va. 52, 57 (2013).

When the trial court accepted Alam's plea agreement in October 2019, Code § 19.2-306.1 did not yet exist. That statute, enacted in 2021, limits a trial court's ability to "impose a sentence of a term of active incarceration upon a . . . technical violation . . . of a suspended sentence or probation." Code § 19.2-306.1; *see Green v. Commonwealth*, 75 Va. App. 69, 74-75 (2022) ("Code § 19.2-306.1 contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical

violations' enumerated in the statute."). [3] Subsection A lists ten "technical violations" of probation. Code § 19.2-306.1(A). A trial court may not impose a sentence of active incarceration for a first technical violation and may impose a sentence of not more than 14 days for a second technical violation. Code § 19.2-306.1(C). "Multiple technical violations . . . considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." *Id.*

We assume for argument's sake that Alam's violation of the conditions of his plea agreement could be characterized as "technical" violations within the meaning of Code § 19.2-306.1. Still, that makes no difference.

Code § 19.2-306.1 does not apply to Alam's plea agreement for at least two reasons. First, that code section did not exist when the trial court accepted Alam's plea agreement in 2019. So it was not part of the background law incorporated by reference into the plea agreement. *See Smith*, 286 Va. at 57; *Everett*, 65 Va. App. at 187.

Second, our appellate courts have repeatedly held that Code § 19.2-306.1 applies retroactively only if both the defendant and the Commonwealth agree to apply it that way. *See Delaune v. Commonwealth*, 76 Va. App. 372, 378-79, *aff'd*, 302 Va. 644, 653-54 (2023); *Green*, 75 Va. App. at 80. But as Alam acknowledged at oral argument, the Commonwealth did not consent to proceed under Code § 19.2-306.1.

Accordingly, we reject Alam's claim that the trial court should have treated his violations of the conditions of his plea agreement as technical violations under Code § 19.2-306.1.

---

[3] Code § 19.2-306.1 is tied to Code § 19.2-306, which permits a trial court to "revoke the suspension of sentence for any cause the court deems sufficient" in any case where "the court has suspended the execution or imposition of sentence." Subsection C provides that the court, "after hearing [and] find[ing] good cause to believe that the defendant has violated the terms of suspension . . . may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C).

- 8 -

*B. The trial court did not err in finding that Alam violated the plea agreement (Assignment of Error 2).*

We next consider Alam's claim that the trial court erred in finding that he violated the plea agreement. A trial court has the "full authority to independently evaluate [a] defendant's compliance" with the terms of probation. *See Connelly v. Commonwealth*, 14 Va. App. 888, 889-90 (1992) (affirming trial court's conclusion that the defendant violated his plea agreement). We review the trial court's independent evaluation for an abuse of discretion. *Id.* at 890; *Burford v. Commonwealth*, 78 Va. App. 170, 179 (2023).

Alam argues that the trial court abused its discretion by holding him to 100% strict compliance with the terms of the plea agreement. He maintains that only "substantial compliance" should be required and argues that he substantially complied.

We find no abuse of discretion in the trial court's decision to require full compliance with the conditions of his plea agreement. That agreement made clear that *any* violation of its conditions was grounds to sentence Alam for the crime of rape, to which Alam had pleaded guilty. Paragraph 19 stated that, at the end of the three-year period, "If I violate *one or more* of the above conditions, I understand that I will have to return to Court to be sentenced in the penalty range" for the crime of "RAPE," as "set out in paragraph 10 above." (Emphasis added.) One of those nine conditions required Alam to "[f]ollow *all* the terms and conditions of probation" set forth in the court's local rules. (Emphasis added.)

"When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." *Palmer & Palmer Co. v. Waterfront Marine Const., Inc.*, 276 Va. 285, 289 (2008); *Anderson v. Commonwealth*, 256 Va. 580, 586 (1998) (finding the language of a waiver in the defendant's plea agreement "clear and unambiguous"). Paragraph 19 of the plea agreement made it abundantly clear that full compliance was required, not just some compliance or substantial compliance. Alam's interpretation of the plea agreement would require that we

pencil in language that is not there. But we "construe[] a contract 'as written, without adding terms that were not included by the parties.'" *Erhardt v. SustainedMED, LLC*, 300 Va. 334, 340 (2021) (quoting *City of Chesapeake v. Dominion SecurityPlus Self Storage, L.L.C.*, 291 Va. 327, 335 (2016)).

What is more, the trial court warned Alam in 2019 about the importance of fully complying with the conditions of the plea agreement. Alam was granted the benefit of the plea agreement only because the victim thought that Alam was capable of reform. The trial court told Alam that the victim was "asking for a real commitment" by him. The court warned that "[i]f it's not demonstrated in these three years, [Alam] [could] be darn sure this is going to have an impact on [him]." We see no abuse of discretion in the trial court's assessment that "the agreement was that [Alam] would be 100 percent compliant with the deferral—he's not. The conditions were not met . . . ."

The trial court had ample basis to find that Alam violated multiple conditions of the plea agreement. Alam admitted that he failed to report his arrest and left Virginia without permission. The Commonwealth introduced into evidence an "Admission Form," signed by Alam, in which he admitted those and other violations, including using unmonitored devices, unsupervised contact with minors, missing curfew, and unreported sexual contact. Alam's probation officer also testified that Alam told her about multiple violations of the sex-offender instructions.

In short, the trial court acted well within its discretion in concluding that Alam violated the conditions of the plea agreement.

### C. Any error in considering hearsay at the sentencing hearing was harmless (Assignment of Error 3).

Alam's final assignment of error alleges that the trial court erred at the sentencing hearing when it considered "unreliable hearsay evidence" to find that Alam violated the plea agreement. He asserts that the letter from Alam's ex-wife's attorney, along with the probation officer's

summary of that letter, is not "reliable." He also claims that the probation officer's testimony improperly relied on the results of his polygraph.

Two of those assertions are easily dispatched. At worst, the probation officer's summary of the attorney's letter and Alam's ex-wife's journal entries were duplicative because the letter and journal entries themselves were included in the major-violation addendum. The trial court could see the letter and journal entries for itself; it did not have to rely on the probation officer's summary. So any error in receiving the probation officer's summary was harmless. Second, the court did not rely on the results of Alam's polygraph examination. Rather, the court considered Alam's admissions to the probation officer after Alam took the polygraph.

Lastly, Alam argues that the attorney's letter and ex-wife's journal entries are unreliable hearsay that should not have been considered at the sentencing hearing. *See Jenkins v. Commonwealth*, 71 Va. App. 334, 343-48 (2019) (discussing the standard for assessing admissibility of challenged hearsay evidence in both revocation and sentencing hearings). As Alam has not raised a Confrontation Clause argument, the only issue is reliability.

Assuming without deciding that the hearsay was unreliable under *Jenkins*, any such error was harmless. The Commonwealth offered those materials to show that Alam traveled to Pennsylvania and had unsupervised visits with his son, all without telling his probation officer. But Alam admitted that he traveled to Pennsylvania without permission and had unsupervised contact with his son. So any error in admitting the letter and journal entries was harmless.

CONCLUSION

We find no basis to disturb Alam's conviction or his sentence.

*Affirmed.*