COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, Causey and Senior Judge Petty
Argued by videoconference


ELIJAH MCCRAY, JR., CO-GUARDIAN
  OF DALE M. MCCRAY,
  AN INCAPACITATED ADULT, ET AL.
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0925-23-1                        JUDGE RANDOLPH A. BEALES
                                                        JANUARY 14, 2025
HERITAGE FOREST II, L.P.


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Matthew W. Hoffman, Judge

> John S. Wilson (John S. Wilson Attorney at Law, PLLC, on brief),
> for appellants.
>
> G. Christopher Jones, Jr. (Mark C. Nanavati; Sinnott, Nuckols &
> Logan, P.C., on brief), for appellee.


Elijah McCray, Jr., and Dale M. McCray, Jr., as co-guardians of Dale M. McCray, an

incapacitated adult, appeal the order of the Circuit Court of the City of Newport News sustaining

Heritage Forest II, L.P.'s demurrer to the McCrays' complaint that alleged a third-party beneficiary

claim.  On appeal, the McCrays argue that the circuit court improperly considered an argument not

specifically stated in the demurrer.  The McCrays also argue that the circuit court improperly

interpreted the language of the underlying contract in sustaining the demurrer.

## I.  BACKGROUND

In reviewing a circuit court's judgment sustaining a demurrer, we "accept as true all

factual allegations expressly pleaded in the complaint and interpret those allegations in the light

most favorable to the plaintiff."  *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

(2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). "Furthermore, we draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.* "We do not evaluate the merits of the allegations, but only whether the factual allegations sufficiently plead a cause of action." *Eubank v. Thomas*, 300 Va. 201, 206 (2021).

The McCrays alleged in their complaint that around midnight on January 26, 2022, Dale M. McCray "was riding a Honda Motor PCX Scooter in the westbound lane of Timber Drive toward Marshall Drive after a social visit with a tenant who resided at the Heritage Forest Apartments." According to the McCrays' complaint, a "rotted branch fell into Mr. McCray's path of travel from a dead and/or diseased tree that was, on information and belief, located on Heritage Forest's Parcel 2A property." Mr. McCray struck the fallen tree branch and "was ejected from the motor scooter," landing "several feet from where the scooter lay down." As a result of the collision, Mr. McCray suffered "a significantly life altering traumatic brain injury, among other major injuries," and he "incurred substantial damages relating to said injuries and conditions." The circuit court declared Mr. McCray an incapacitated adult requiring "continuous care in skilled facilities for the rest of his life." Mr. McCray's brother, Elijah McCray, Jr., and his son, Dale M. McCray, Jr. (collectively "the McCrays"), qualified as his co-guardians.

On December 8, 2022, the McCrays brought a third-party beneficiary claim against Heritage Forest II, L.P. ("Heritage") in the circuit court.[1] The McCrays attached to their complaint a "Declaration of Cross Easements Agreement," which was executed by Heritage on July 15, 2011. The Declaration, which defined Heritage as one of two "Declarants," established "certain reciprocal cross easements across Parcel I and Parcel II, to provide for the perpetual and

---

[1] Although the complaint raised other claims against additional parties, the McCrays non-suited those other claims, leaving only the third-party beneficiary claim against Heritage.

nonexclusive right of vehicular and pedestrian access for the benefit of and as an appurtenance to the other respective parcel, and to provide for the sharing of certain common expenses." The Declaration required Heritage to "maintain the Easements in good repair and safe condition at all times and in compliance with all applicable laws, statutes, ordinances, rules and regulations." Relevant to this appeal, the Declaration provided:

> The Declarants hereby declare that Parcel I and Parcel II are, and shall be held, transferred and sold, conveyed, leased, subleased and occupied subject to the following described reciprocal easements, covenants, terms, provisions and conditions which shall be binding upon and shall inure to the benefit of any and all parties having any right, title or interest in or to Parcel I and Parcel II or any portion thereof, including, but not limited to, the Declarants, the Trustees, Lender, every trustee and noteholder under any mortgage or deed of trust constituting a lien on any portion of Parcel I and Parcel II, and all tenants, subtenants, licensees, invitees, customers, employees, successors and assigns of the Declarants and of the Declarants' successors and assigns.

In their complaint, the McCrays alleged that Mr. McCray was "an intended third-party beneficiary of the easements, covenants, terms, provisions, and conditions of the Cross Easements Agreement as a licensee and/or invitee." The McCrays also alleged that Heritage "had the duty and obligation to act in compliance with its promises made in the Cross Easements Agreement relating to maintaining the Easements in a safe condition." They further alleged that Heritage "breached the Cross Easements Agreement by not maintaining the Easements in good repair and safe condition at all times," that "Mr. McCray was injured as a direct, proximate, and foreseeable consequence of" the breach, and that "Mr. McCray is entitled to seek compensatory damages for the losses that he sustained as a direct and proximate cause of such breach."

Heritage demurred to the McCrays' complaint. In its demurrer, Heritage argued that whether Mr. McCray "is a third-party beneficiary of the Declaration of Cross Easements Agreement constitutes a legal conclusion." Heritage further argued that the McCrays "have not alleged facts showing a failure to maintain the 'Easements.'" Heritage contended that it had no

- 3 -

duty under the Declaration to maintain the tree from which the rotted limb fell because the McCrays "have not alleged — and cannot in good faith allege — the tree at issue was planted, maintained, etc. for purposes of permitting vehicular and pedestrian ingress to and egress from the apartment complex(es)." Urging the circuit court to "consider the clear and express language of the Declaration of Cross Easements Agreement in evaluating Plaintiffs' third-party beneficiary claim," Heritage asked the circuit court to "reject Plaintiffs' conclusory allegation that the tree at issue constituted part of the Easements" and to "dismiss Plaintiffs' third-party beneficiary claim with prejudice."

The McCrays opposed Heritage's demurrer, arguing that they had sufficiently alleged in their complaint that Mr. McCray was an intended third-party beneficiary of the Declaration. They emphasized that their complaint "specifically alleges that Mr. McCray was at the Heritage Forest apartments as an 'invitee' of one of the tenants, which is one of the classes of people intended to be third-party beneficiaries" of the Declaration. The McCrays contended that "[w]hether Mr. McCray was in fact an invitee or whether he was otherwise an intended third-party beneficiary under the totality of the circumstances are factual questions properly framed but not amenable to resolution on demurrer." They further contended that whether the tree was within the scope of Heritage's maintenance obligations under the Declaration — as alleged in their complaint — "is a factual question that cannot be decided as a matter of law at the pleadings stage." Finally, the McCrays maintained that their complaint adequately alleged that Heritage breached the Declaration by "permitting the dead tree on its property to remain" — and that Heritage's breach proximately caused Mr. McCray's injuries from the accident.

The circuit court heard argument on Heritage's demurrer, and the circuit court confirmed that "for the purposes of the hearing," the allegation that Mr. McCray was an invitee was "true at this point." Counsel for the McCrays argued that in the demurrer, Heritage "never raised the issue

- 4 -

of him [Mr. McCray] not being a third-party beneficiary." The circuit court highlighted the bolded heading in Heritage's demurrer, which states, "Plaintiffs' allegations fail to state a third-party beneficiary claim." The circuit court then asked the McCrays' counsel, "So you are saying that that does not include the overall umbrella argument that he is not a third-party beneficiary?" Counsel for the McCrays answered in the affirmative, and he asserted that the Declaration

> says that the benefits of the contract shall inure to the class of people who are described and one of those classes of people described is an invitee. That is Paragraph 1. And they [Heritage] have admitted or at least the allegations in the complaint they admit as true states that he [Mr. McCray] is an invitee; therefore, he falls within the class of third-party beneficiaries who is expressly named in the contract.

In response, counsel for Heritage argued that Mr. McCray was not a third-party beneficiary under the Declaration because he was an invitee of a tenant, not an invitee of Heritage as a Declarant. The circuit court then opined, "I have never seen a contract like this, honestly. I have never seen language to really include as it opens it up for almost — it is like almost screaming for a third-party beneficiary in this language." After hearing the parties' arguments, the circuit court took the matter under advisement.

On May 10, 2023, the circuit court issued a letter opinion sustaining Heritage's demurrer. In so ruling, the circuit court recognized that even if "the facts alleged in the Complaint constitute a breach that would permit the Plaintiff to recover for the breach, the Plaintiff must be an intended, not an incidental beneficiary" of the Declaration. The circuit court found that Mr. McCray "is not a tenant, subtenant, licensee, invitee, customer, employee, successor or assign *of the Declarant*," Heritage. (Emphasis in original). Rather, the circuit court determined that Mr. McCray is "an invitee *of a tenant*," not Heritage, so he was therefore "not an intended beneficiary" of the Declaration. (Emphasis in original). The circuit court concluded that because Mr. McCray "was an incidental beneficiary, not an intended one" of the Declaration, he could not "maintain a third-party beneficiary claim" against Heritage. By final order entered on

May 10, 2023, the circuit court sustained Heritage's demurrer, and it dismissed the McCrays' complaint with prejudice. The McCrays appeal to this Court.

## II. ANALYSIS

"The purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted. A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Seymour*, 301 Va. at 164 (alteration in original) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)). It is well-established that a circuit court "is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a . . . complaint." *Id.* (alteration in original) (quoting *Riverview Farm Assocs., Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 427 (2000)). "Rather, the circuit court's duty is to 'determine whether the factual allegations of the . . . complaint are sufficient to state a cause of action.'" *Id.* (quoting *Riverview Farm Assocs., Va. Gen. P'ship*, 259 Va. at 427). We review a circuit court's judgment sustaining a demurrer *de novo*. *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 527 (2023).

### A. Grounds for Sustaining the Demurrer

On appeal to this Court, the McCrays argue,

> The trial court erred in raising on its own and prompting defense counsel to argue that Mr. McCray was not an intended third-party beneficiary under the contract because he was not an invitee of the declarant, which was not one of the grounds raised in the demurrer in contravention of Virginia Code Section 8.01-271.

The McCrays contend that because Heritage "did not argue that Mr. McCray was not an invitee of the Declarant and therefore was not an intended third-party beneficiary" of the Declaration, the circuit court incorrectly sustained the demurrer on that basis.

"Subject to the provisions of this title, pleadings shall be in accordance with Rules of the Supreme Court." Code § 8.01-271. "All demurrers shall be in writing and shall state

- 6 -

specifically the grounds on which the demurrant concludes that the pleading is insufficient at law. No grounds other than those stated specifically in the demurrer shall be considered by the court." Code § 8.01-273(A). This Court has adhered to the "long-standing feature of Virginia demurrer practice" that "we may affirm an order sustaining a demurrer only on a ground that the defendant raised in the trial court." *Theologis v. Weiler*, 76 Va. App. 596, 604 (2023). Thus, Code § 8.01-273 prevents this Court from permitting a defendant to benefit from an argument that it did not include in its own demurrer. *See id.*

Here, however, Heritage's demurrer specifically asserted that the McCrays' "allegations fail to state a third-party beneficiary claim." Heritage further asserted in its demurrer that whether Mr. McCray "is a third-party beneficiary of the Declaration of Cross Easements Agreement constitutes a legal conclusion." Heritage urged the circuit court to "consider the clear and express language of the Declaration of Cross Easements Agreement in evaluating Plaintiffs' third-party beneficiary claim," and it asked the circuit court to "dismiss Plaintiffs' third-party beneficiary claim with prejudice." The circuit court determined that whether Mr. McCray, as an invitee of a tenant, was an intended third-party beneficiary of the Declaration fell under Heritage's "overall umbrella argument" in its demurrer that the McCrays' "allegations fail to state a third-party beneficiary claim." In short, we find that Heritage's demurrer adequately raised the issue of whether Mr. McCray was a third-party beneficiary of the Declaration, and the circuit court did not erroneously base its ruling on a ground that was not actually raised in Heritage's demurrer.

## B. Intended Third-Party Beneficiary

The McCrays next argue that the circuit court "erred in granting Defendant's demurrer to Count IV, and in entering the final order that dismissed the complaint with prejudice, based upon an incorrect interpretation of the third-party beneficiary provision in the contract." The McCrays

contend that the circuit court erred in "ruling that Mr. McCray was merely an incidental beneficiary under the contract, based upon its erroneous reading that an 'invitee' must be an invitee of the declarant to be an intended third-party beneficiary of the contract." They further contend that the circuit court "erred when not giving effect to the introductory word 'all' before the list of categories of third-party beneficiaries."

"The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon a third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Levine v. Selective Ins. Co. of Am.*, 250 Va. 282, 285 (1995) (quoting *Copenhaver v. Rogers*, 238 Va. 361, 367 (1989)). In order to sufficiently allege a third-party-beneficiary claim, the McCrays must have alleged facts sufficient to show that Mr. McCray was an intended third-party beneficiary of the Declaration — not merely an incidental beneficiary. *See Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 105 (2019).

> "An incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue on that contract," but "an intended beneficiary is such an integral part of the obligations assumed by the contracting parties that a court will permit him to sue on that contract."

*Id.* at 104-05 (quoting *Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 292 Va. 257, 273 (2016)). "While a contract may expressly state such an intent to benefit a third party, evidence of such intent need not be limited to the four corners of the contract." *Id.* at 105.

We review issues of contract interpretation *de novo*. *Ehrhardt v. SustainedMED, LLC*, 300 Va. 334, 340 (2021) (quoting *City of Chesapeake v. Dominion SecurityPlus Self Storage*, 291 Va. 327, 334 (2016)). In reviewing a contract, we are "not bound by the trial court's conclusions as to the construction of the disputed provisions." *Jones v. Gates*, 68 Va. App. 100, 105 (2017) (quoting *Smith v. Smith*, 3 Va. App. 510, 513 (1986)). We construe the contract "as written, without adding terms that were not included by the parties." *Ehrhardt*, 300 Va. at 340

(quoting *Dominion SecurityPlus Self Storage*, 291 Va. at 335). The fundamental question is "what did the parties agree to as evidenced by their contract, and the guiding light for such construction is the intention of the parties as expressed by them in the words they have used." *Id.* at 340-41 (quoting *RECP IV WG Land Investors LLC v. Capital One Bank (USA), N.A.*, 295 Va. 268, 283 (2018)). "When a contract is clear and unambiguous, the '[w]ords that the parties used in a contract are normally given their usual, ordinary, and popular meaning.'" *Id.* at 341 (alteration in original) (quoting *RECP IV WG Land Investors LLC*, 295 Va. at 283). "Our presumption is always that the parties 'were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons.'" *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 200 (2017) (quoting *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001)).

In this case, the Declaration of Cross Easements Agreement specifically provides, in relevant part:

> The Declarants hereby declare that Parcel I and Parcel II are, and shall be held, transferred and sold, conveyed, leased, subleased and occupied subject to the following described reciprocal easements, covenants, terms, provisions and conditions which shall be binding upon and shall inure to the benefit of any and all parties having any right, title or interest in or to Parcel I and Parcel II or any portion thereof, including, but not limited to, the Declarants, the Trustees, Lender, every trustee and noteholder under any mortgage or deed of trust constituting a lien on any portion of Parcel I and Parcel II, and all tenants, subtenants, licensees, invitees, customers, employees, successors and assigns of the Declarants and of the Declarants' successors and assigns.

As the Declaration plainly states, "Parcel I and Parcel II are, and shall be held, transferred and sold, conveyed, leased, subleased and occupied subject to the following described reciprocal easements." The Declaration then states that the reciprocal easements "shall be binding upon and *shall inure to the benefit of* any and all parties having any right, title or interest in or to Parcel I and Parcel II or any portion thereof." (Emphasis added). Thus, the intended third-party

beneficiaries of the Declaration consist of "any and all parties having any right, title or interest in or to Parcel I and Parcel II or any portion thereof." The Declaration goes on to provide a broad list defining the class of intended third-party beneficiaries under the Declaration — i.e., "*all* tenants, subtenants, licensees, invitees, customers, employees, successors and assigns of the Declarants and of the Declarants' successors and assigns." (Emphasis added).

In their complaint, the McCrays alleged that Mr. McCray "was visiting a tenant at the apartment project as *an invitee of a tenant* leasing a residential unit at the Heritage Forest Apartments and was therefore a *licensee* or *invitee* on the property that was the subject of the" Declaration. (Emphases added). The Supreme Court has explained that a "licensee is one who enters for his own convenience or benefit with the knowledge and consent, express or implied, of the owner or occupier." *Pearson v. Canada Contracting Co.*, 232 Va. 177, 182-83 (1986); *see also Bradshaw v. Minter*, 206 Va. 450, 452 (1965) (stating that a social guest is a licensee, not an invitee, regardless of the existence of an express invitation). On the other hand, an "invitee is one who enters pursuant to the express or implied invitation of the owner or occupier other than for a social purpose or for his own convenience." *Pearson*, 232 Va. at 183; *but see Bauer v. Harn*, 223 Va. 31, 37 (1982) (construing "invitees" as used in a restrictive covenant to include "social guests" of a neighborhood association and of its members). Furthermore, the Virginia Residential Landlord and Tenant Act, Code §§ 55.1-1200 through 55.1-1262, defines "[g]uest or invitee" to mean "a person, other than the tenant or an authorized occupant, who has the permission of the tenant to visit but not to occupy the premises." Code § 55.1-1200.

The plain language of the Declaration demonstrates that the intended third-party beneficiaries under the Declaration include *all* licensees and *all* invitees. *See McMillion v. Commonwealth*, 81 Va. App. 344, 352 (2024) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier

- 10 -

normally applies to the entire series." (quoting *Series-Qualifier Canon*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012))).  However, the class of intended third-party beneficiaries under the Declaration certainly does not extend to all licensees and all invitees in general.  Rather, the Declaration by its express terms limits the class of intended third-party beneficiaries to all licensees and all invitees "having any right, title or interest in or to Parcel I and Parcel II or any portion thereof," which includes all licensees and all invitees of a tenant on the property.  Therefore, Mr. McCray qualified as an intended third-party beneficiary under the specific words of this particular agreement or contract.

As the Supreme Court has often stated:

> It is the function of the court to construe the contract made by the parties, not to make a contract for them.  The question for the court is what did the parties agree to as evidenced by their contract.  The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

*Wilson v. Holyfield*, 227 Va. 184, 187 (1984) (quoting *Meade v. Wallen*, 226 Va. 465, 467 (1984); *W.F. Magann Corp. v. Virginia-Carolina Electrical Works, Inc.*, 203 Va. 259, 264 (1962)).  Although the intended third-party beneficiary language in this specific Declaration is written to be broad, "[c]ourts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed." *American Standard Homes Corp. v. Reinecke*, 245 Va. 113, 122 (1993) (quoting *The Bank of Southside Virginia v. Candelario*, 238 Va. 635, 640 (1989)).  The Supreme Court has cautioned that "the folly or wisdom of a contract is not for the court to pass upon.  Its terms, however onerous they may be, must be enforced if such is the clear meaning of the language used, and the intention of the parties using that language." *Pierce Oil Corp. v. Voran*, 136 Va. 416, 439 (1923).

As alleged in the complaint, Mr. McCray was departing from a visit with a tenant on the property when a tree branch fell and caused him to fall off his scooter, resulting in life-altering injuries. Under the plain terms of this particular Declaration of Cross Easements Agreement, Mr. McCray qualified as an intended third-party beneficiary of this contract because he was a licensee or an invitee of a tenant, and the tenant had a right or interest in the property (or a portion of the property) — i.e., the tenant's apartment there at the Heritage Forest Apartments. Consequently, we conclude that the circuit court erred in finding that Mr. McCray "was an incidental beneficiary, not an intended one" of the Declaration, and also in holding that the McCrays were unable to maintain a third-party claim. The circuit court therefore further erred in sustaining Heritage's demurrer and dismissing the McCrays' complaint with prejudice.

## III. CONCLUSION

In short, while the circuit court sustained Heritage's demurrer based upon a ground that was adequately raised in the demurrer, the circuit court, however, erred in finding that Mr. McCray was an incidental beneficiary rather than an intended third-party beneficiary of the Declaration — and further erred in sustaining Heritage's demurrer and in dismissing the McCrays' complaint with prejudice. Therefore, for all of the foregoing reasons, we reverse the judgment of the circuit court, and we remand the case to the circuit court for a hearing on the merits of the McCrays' complaint and for further proceedings consistent with this opinion.

*Reversed and remanded.*